W. F. NORMAN ET AL. v. R. D. THOMPSON ET AL.

Decided November 29, 1902.

**Local Option Election—Notice—Failure to Post.**
Where one of the five copies of notice of holding a local option election was posted only nine days instead of twelve days prior thereto, but the voters of the county had actual notice of the election, and the result thereof was not affected by the failure to post such copy for the full twelve days, the election was not for that reason rendered void.

Appeal from the District Court of Hunt County. Tried below before Hon. H. C. Connor.

*Looney & Clark,* for appellants.

*C. E. Meade,* for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—A local option election held throughout Hunt County on May 3, 1902, resulted in favor of prohibition. W. F. Norman and others instituted proceedings to contest the election, the county judge being named as contestee. It was alleged, as ground for the contest, that one of the five copies of the order for the election, which were posted as notices, was not posted twelve days before the election. The contestee replied that the qualified voters of the county had notice of the election, and that if the copy of the order in question was not posted at the proper time, the failure to post the same did not affect the result of the election. On a trial, judgment was entered for the contestee, and the contestants have appealed.

There is no statement of facts in the record. The trial judge filed conclusions of fact wherein he found that the particular copy of the order was posted only nine days before the election; that the qualified voters of the county had actual notice of the election, and that the result thereof was not affected by the failure to post the copy of the order twelve days before the election. Upon this state of facts he held, as a matter of law, that the election was valid. The question presented on this appeal is whether the failure to post the copy of the order twelve days before the election rendered the election void, notwithstanding the fact that the qualified voters of the county had notice of the election, and the further fact that the failure to post the copy of the order in due time did not affect the result of the election.

The method of giving notice of a local option election is prescribed by article 3387, Revised Statutes, which provides that "the clerk of said court shall post or cause to be posted at least five copies of said order of election at different places within the proposed limits for at least twelve days prior to the day of election, which election shall be held and returns thereof made in conformity with the provisions of the general laws of the State and by the officers appointed and qualified under such laws." The first contention of appellants is that the Court of Criminal Appeals

has repeatedly construed this article of the statutes, and has uniformly held that the election is void if the statutory notice has not been given; that since the said article has been so construed, the Legislature has amended the same, and has not provided that the failure to give the statutory notice shall not invalidate the election if the voters have notice otherwise of the election, and the result is not affected, thereby accepting the construction placed on the said article by said court and concluding the question as to the legislative intent.

The following cases are relied on by appellants, viz: Ex parte Kramer, 19 Texas Crim. App., 124; Smith v. State, 19 Texas Crim. App., 444; James v. State, 21 Texas Crim. App., 356; Irish v. State, 29 S. W. Rep., 778; Bowman v. State, 40 S. W. Rep., 798; Bowman v. State, 41 S. W. Rep., 635; Shields v. State, 42 S. W. Rep., 398; Frickie v. State, 45 S. W. Rep., 810. In the Kramer case, which was a habeas corpus proceeding, the court said: "In the statutes providing for such elections, it is required that the clerk shall post or cause to be posted at least five copies of the order for election at different public places in the county, for at least twenty days prior to the day of election. It appears from the record in the case before us, and is a fact admitted by the prosecution, that this requirement of the law was not observed. But one copy of the order for the election was posted twenty days prior to the election. The other four copies were posted less than twenty days prior to such election. There are other defects in the election which are perhaps also fatal to its validity; but this one alone is sufficient to render it void under our view of the law, and the previous decisions of this court." None of the decisions referred to relate to the question of notice. The relator was discharged. The Smith case was an appeal from a conviction for violating the local option law. The record showed an agreement to the effect that "after the court had ordered the election, and prior to the holding of the same, only three certified copies of the order of election were posted, * * * and that these were the only notices of said election that were ever posted." It was held that the election was void, and the prosecution was dismissed. In the James case it was held that the evidence was not sufficient to show that the notices were posted, and the judgment was reversed and the cause remanded. This case was overruled by the Irish case, and it was held that, under the statute making the order declaring the result of the election prima facie evidence of the regularity of the proceedings, the burden was on the defendant to show that the notices had not been posted. The judgment was affirmed. The Bowman cases were to the same effect, and both judgments were affirmed. This holding was again followed in the Shields case, and it was held that the evidence offered by the defendant to show that the notices were not posted was not sufficient to require the submission of the issue to the jury. This judgment was also affirmed. In the Frickie case, which was a charge of violating the identical law involved in the Shields case, it was held that the evidence tending to show that the notices were not posted was such that

it was the duty of the court to submit this issue to the jury. Because this was not done the judgment was reversed and the cause remanded.

After the decisions in the Smith and Kramer cases had been rendered, the Legislature amended the article in question and changed the time for posting the notices from twenty to twelve days, and omitted the word "public" from the provision regarding the place of posting the notices.

A careful examination of the cases cited shows that in none of them was the court considering the question involved in this case, that is, whether the election was void if the statutory notice was not given, notwithstanding the fact that the voters had notice and that the result of the election was not affected by the failure to give the notice prescribed by law. The records before the court in the Kramer and Smith cases showed that the notices were not posted. In the Kramer case, the fact was admitted by the prosecution and in the Smith case was shown by an agreed statement. In this condition of the records it was held, and we think properly, that the elections were void. It is evident that the admissions and agreements made by the State in these cases, as above set out, controlled the court in its action in making final disposition of the prosecutions. It was conceded by the State in each of the cases that the statutory notice had not been given, and there was no suggestion that the voters had actual notice. Notice to the voters is essential to the validity of such elections, and if it appears that the notice required by the statute was not given, the presumption is that the electors did not have notice. An appellate court passes upon a case on the record made before it, and if the record shows a void election, it will be so adjudged. The record on appeal may show a state of facts which will render the election void, when if all the facts were disclosed the election would be valid. An election is either void or valid; if it is void for any reason it can not be made valid. But a valid election may be made to appear void by a record on appeal, and the court will dispose of the case on the record, and not on some theory not suggested by the facts contained in the transcript. On the other hand, a void election may appear to be valid. In the very list of cases cited by appellants, the Court of Criminal Appeals recognized and applied the rules stated. In the Shields case the election was held valid and the appellant was compelled to pay the penalty of a violated law. In the Frickie case it was held that the same law as that involved in the Shields case may not have been legally adopted, and the cause was remanded for a further trial of the issue. Again, if the election is void, it is not made valid by the order of the court declaring the result, and yet it was held in the Irish, Bowman, Shields, and Frickie cases, that convictions for violating the law would be sustained, so far as the question of giving notice of the election was concerned, upon proof of the entry of such order. It is therefore clear that because a particular election has been held void on a record showing that the statutory notice of election was not given, this is not decisive of the question whether all elections held without that

character of notice are invalid. The very question which was before
the Court of Criminal Appeals and considered and decided by that court
in the cases cited was whether an election shown by the record to have
been held without the statutory notice being given, there being no sug-
gestion that the voters had actual notice, was a valid election. This is
not the question presented in this case. The question here is whether,
if the statutory notice was not given, the election would nevertheless be
valid, provided the voters had actual notice, and the failure to comply
with the statute did not affect the result of the election. That this ques-
tion was not passed on by the Court of Criminal Appeals is shown by
the fact that in none of their opinions is there the slightest reference
to it. When the state of the law upon that question is considered, as
it will be later on in this opinion, it is inconceivable that the court
should have determined the question without paying it "the cold re-
spect of a passing glance." The fact is, that the question has never been
considered, much less decided, by the Court of Criminal Appeals, and
the Legislature in amending the article of the statute respecting notice
did not have in mind a decision which was never rendered. The con-
trary contention has been urged by counsel for appellants with zeal and
ability, but our conviction is strong that their contention is unsound.

We now come to a consideration of the question on its merits. The
case turns on the construction to be placed on article 3387, quoted in
the beginning of this opinion. It is our duty to ascertain the legislative
will and follow it. Was it the intention of the Legislature that a fail-
ure to comply with the statute in respect to giving notice of the election
should render the election void, regardless of whether the voters had ac-
tual notice, and of whether the failure to comply with the statute af-
fected the result? Where such intention exists, it is usually manifested
by incorporating an express declaration to that effect in the statute. It
must be held that the Legislature had in mind this rule of law when
the article in question was adopted, and, as the article contains no such
declaration, it will be presumed that no such intention existed, unless
the language of the article forbids such presumption. The statute is
expressed in mandatory terms, but this fact does not necessarily require
the construction propounded by appellants. In discussing the effect of
the use of the word "shall" in another article of the statute relating to
the designation of election precincts, our Supreme Court, in Davis v.
State, 75 Texas, 433, said: "It may be said that the use of the word
'shall' shows that the provision is mandatory. That it is a command to
the commissioners court may be granted, but it does not follow that it
is mandatory in the sense that it makes a compliance with the provision
essential to the validity of the election. The word 'shall' has been fre-
quently construed as not mandatory when the provision in which it was
found did not confer a private right, and the public interest did not
demand such construction." In that case the court declared that, "the
main design of all election laws is, or should be, to secure a fair expres-
sion of the popular will in the speediest and most convenient manner;

and we think that a failure to comply with provisions not essential to attain that object should not avoid the election, in the absence of language clearly showing that such was the legislative intent." The court called attention to the fact that the statute there considered did not contain an express declaration that a failure to comply with its requirements should avoid the election, and it was held that the statute was directory, although the article there construed was couched in mandatory language. To similar effect is the decision of the Court of Criminal Appeals in Snead v. State, 40 Texas Criminal Reports, 262. The object of the Legislature in enacting the article under consideration in the case at bar was to insure notice to the voters of the election. Voss v. Terrell, 40 S. W. Rep., 170. Notice to the voters is essential to the validity of such elections, but if the voters have actual notice, it is apparent that the statutory notice is unnecessary. In the very nature of things, the posting of only five notices in a great county like Hunt would amount to no more than constructive notice to the mass of the people. In such case, it is easily conceivable that the notice received by the voters in the progress of the campaign would be more general and effective than that derived from the statutory notices. The object of the law requiring copies of the order of election to be posted being simply to provide for notice to the voters, to hold the election void because one of the copies was not posted for quite the full time, would accomplish no good purpose if the voters had actual notice of the election. We think that literal compliance with the statute should be required only when necessary to protect the electors in their right of suffrage, and that such was the intention of the Legislature. To hold otherwise would be to sacrifice the purpose and spirit of the law to form and literalism, and this can not be permitted. It is significant of the intention of the Legislature that the article providing for notice contains a clause, also in mandatory language, requiring the election to be held and the returns thereof to be made in conformity with the provisions of the general laws regulating elections. Many of the provisions referred to, although mandatory in form, have been held to be merely directory. It is not an unreasonable conclusion that the Legislature intended a like construction to be placed on the provision respecting notice, since that provision is incorporated in the same article with the requirements concerning the manner of holding the election. And by article 3390 it is provided that the order of the court declaring the result of the election shall be prima facie evidence that all the provisions of the law have been complied with in giving notice of and holding such election, again placing the giving of notice on the same footing with the provisions regarding the holding of the election.

The very question raised in this case has never before been presented for decision in this State. In Swenson v. McLaren, 21 Southwestern Reporter, 300, it was held that a school tax election was void because the notices of election were issued and signed by the county judge when

the law required the same to be signed by the sheriff. The court said that the voters were required by law to assemble only at the call of the sheriff, and not at the call of the county judge. In Field v. Hall, 40 Southwestern Reporter, 749, it was held that a stock law election was invalid because the county judge, without authority from the commissioners court, changed the time of holding the election, the court alone having power under the law to fix the time of election. It is obvious that these cases are not in point. In the first case the notices were null and void because not issued by the proper officer, and there was no attempt to show that the voters had notice otherwise of the election. In the second case the election was held on a day different from that fixed by the court having power to set the time of holding the election, and was therefore a nullity.

The question has, however, received consideration in other jurisdictions. In American and English Encyclopedia of Law, volume 10, page 626, the rule is thus stated: "In the case of special elections, however, when the law does not fix the time and place for holding same, but they are to be fixed by some authority, failure to give such notice or issue a proclamation of the election will render it a nullity, unless the people have actual knowledge and attend so that the result is not affected. If it appears that the people generally had actual notice of a special election, so that the result would not have been different of proper notice had been given, failure to give such notice does not vitiate the election." In McCrary on Elections, sections 176 et seq., the question is discussed, and the rule announced that when the election has been held at the proper time and place and the electors had notice and participated in it, the want of such notice as the law provides will not render it void.

One of the earliest case involving the question arose in Ohio and was considered by the Supreme Court of that State in Foster v. Scarff, 15 Ohio, 532. Legal notice was not given, and the election was held void. But in concluding the opinion the court uses this language: "In deciding this case, however, we do not intend to go beyond the case before us, as presented by its own peculiar facts. We do not intend to hold, nor are we of opinion, that the notice by proclamation as prescribed by law, is per se, in all supposable cases, necessary to the validity of an election. If such were the law, it would be in the power of a ministerial officer, by a misfeasance, always to prevent a legal election. We have no doubt that when an election is held in other respects as prescribed by law, and notice in fact of the election is brought home to the great body of the electors, though derived through means other than the proclamation which the law prescribes, such election would be valid." In the case of Wheat v. Smith, 7 Southwestern Reporter, 161, the very point was decided by the Supreme Court of Arkansas. That case was a contest of a special election held to fill a vacancy in an office. It was doubtful from the evidence whether the notice required by law had been

given, but it was shown that the voters had notice in fact, and that the result was not affected by the failure to give the statutory notice. In discussing the issue the court said: "When a special election to fill a vacancy is ordered, there is no presumption that the voters know the date fixed by the writ of election, and they must be informed of it. But the established rule is that the particular form and manner pointed out by the statute for giving notice is not essential. Actual notice to the great body of electors is sufficient. The question in such case is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election. * * * When the election is legally ordered, and the elections are actually apprised of the time and place for holding it, the misfeasance or nonfeasance of the officer upon whom the statute devolves the duty of giving the election notice can not deprive the electors of the power to express their will through their ballots."

Another case in point is that of In re Rowley, 70 New York Appellate Division, 208, decided by the Supreme Court of that State in 1901. A local option election was ordered, and it was the duty of the town clerk, under the statute, to post notices of the election. This he wholly failed to do, but the voters had actual notice. It was held that the election was valid, the court saying: "As I have said before, it was the duty of the town clerk to give notice of the vote on local option. * * * The statute in respect to his duties is directory only. In case of a failure of the town clerk to post and publish the notice, where the electors were not given other notice, the vote cast would be void, and the will of the people thwarted by the willful refusal of that officer to perform his duties. But that is not the case here. The end sought to be attained by the statute, to wit, the giving of notice of the questions to be voted for at the town meeting, was accomplished in this case, as already clearly appears." To the same effect is the case of Little v. Langley, 32 Lawyers' Reports Annotated, 723, decided by the Supreme Court of North Dakota. The question voted on related to the location of a county seat. The sufficiency of the notice was assailed, and the court held that there was a *substantial* compliance with the statute, but that as the voters had notice in fact and a full vote was polled, the defect in the notice, if any, did not affect the validity of the election.

The authorities quoted from the above and the cases cited therein are believed to be decisive of the question. The overwhelming weight of authority is unquestionably in favor of the contention of appellee that the failure to give the statutory notice of an election, if the voters had knowledge of and participated in the election so that the result thereof was not affected by the failure to give notice in the manner prescribed by law, will not vitiate the election.

We do not desire to be understood as disparaging the notice required by the statute. When such notice is not given, the evidence offered to show actual notice will be closely scrutinized, and unless it is sufficient

to show with reasonable certainty that no injury has resulted from the failure to give precise legal notice, the election will be declared void. No question concerning the sufficiency of the evidence is presented in this case.

The judgment of the trial court was in accordance with the views above expressed, and will therefore be affirmed.

*Affirmed.*