White, J.
This is a petition to contest an election held under the act of the General Assembly of Ohio, passed April 18th, 1904, and approved by the governor of Ohio, April 19th, 1904 (97 Ohio Laws, page 87), commonly known as The Brannock Law.’ ’ This election was held on the 7th day of July, 1904, in a residence district of the city of Cleveland. The petitioner is a qualified elector of the residence district in which the election was held. He sets forth in his petition a description of the residence district, which is somewhat lengthy, and which I do not quote for the reason that, while it is stated in the petition that said resi *330 dence district is not a clearly described, contiguous and compact section, or territory in a municipal corporation, bounded by streets, corporation or other recognized lines or boundaries, as required by the Uferms and conditions of said act known as the Brannock Bill, yet, on the hearing, no insistence ivas made upon this irregularity, if it was an irregularity, in the petition for the election.
The petitioner states that there were to be two voting booths or places for holding the election in said district on the 7th day of July, 1904, one of which booths or voting places was not within the residence district so defined and described in the petition, and that the order of the Honorable T. K. Dissette. judge of the court of common pleas, designates one of said booths or election place, known as “Ward 22, H,” as. being located on the southeast corner of Lexington and Giddings avenues, in the city of Cleveland, which southeast corner of Lexington and Giddings avenues is not within the district described in the petition filed with the said Honorable T. K. Dissette. and not within the district described and defined in the order for said election, issued by the said judge; and that said voting place or booth known as “Ward 22,' IT” should have been placed within the boundaries of the district described therein, as required by said law.
There are other allegations of irregularity in said petition upon which some evidence was offered, but which, in argument, and on submission to the court, counsel for the. petitioner do not insist. The chief of these was the irregularity charge.d in the petition that the election officers failed to comply with the sections of the Revised Statutes of Ohio providing for elections in the state of Ohio, in this, that they did not record the names of electors in the poll books at the time the votes were cast, and that votes were cast by electors in which the “secondary stub,” so called, was not detached from the ballot by the election officer or officers, and that ballots were east at said election on which the electors themselves wrote their respective names, or numbers, or both, upon the secondary stub, so called, instead of their being written by the proper election officers as required by law.
*331 This case comes before the court after the taking of some evidence as to the irregularities of this election, and the improper location of the voting place, without the introduction of any countervailing evidence, and upon a motion or submission in the nature of a demurrer to the case made by the petitioner.
It is stated in the petition that the majority of votes cast in favor of prohibiting the sale of intoxicating liquors as a beverage, within the limits of said residence district, was about forty.
The petition is urged chiefly, and I may say exclusively, upon the irregularity as to the actual order for, and the actual location of, the booths or voting place at the southeast corner of Lexington and Giddings avenues in this city. The easterly boundary line of the residence district which, I believe, was known as “District No. 16,” as described in the petition for the election, and in the order made by the Plonorable T. K. Dissette, was the center line of Giddings avenue for a certain distance. The voting booth known as “Ward 22, H,” and which constituted one of the voting places, was located on the east side, within the street lines, of Giddings avenue, but upon the east side thereof, and about fifteen feet from the center line of said avenue; when it should have been, to have been actually within the lines of the district, on the southwest side of Giddings avenue, at the corner of Giddings and Lexington avenues. It was located at the corner of Giddings and Lexington avenues, but on the southeast corner, instead of the southwest corner, and within fifteen feet of its proper location, so as to have been wholly within the residence district.
The number of votes cast at this polling place is not stated in the petition, nor is it shown in the evidence, and it is not shown that any fraud was practiced in thus placing the booth and polling place; nor that any electors were misled thereby, or deprived of their right and opportunity to vote at said election; nor is it insisted that the result would have been changed if said polling place and booth had been properly located within said district.
It is insisted by the petitioner, by his counsel, that the Brannock Law, so-called, provides that the election shall be held at *332 the usual place or places for holding municipal elections “in said residence district,” if there be such place or places; and if not, at such place as the mayor or judge may direct “within” said residence district, and notice shall be given and the election conducted in all respects as provided by law for the election of members of the council of said corporation, so far as said law may be applicable.
Again, that at such election only duly qualified electors residing “within” the residence district shall be entitled to vote.
Again, that when the petition, with the proper percentage of qualified electors of any residence district, is presented to a-common pleas judge, or the mayor of the city, the common pleas judge or mayor shall order a special election to be held in not less than twenty days, nor more than thirty days from the filing of such petition.
It is contended that in.respect of all these requirements and conditions to be contained in the order of the judge or mayor, and in the mayor’s proclamation, giving notice of the election; the designation of voting places within the district, and not without; the time of the election, not less than twenty, nor more than thirty, days from the filing of the petition; that the election shall be conducted in all respects as provided for by law for the election of members of the council of the corporation; and that only the qualified electors residing within the district shall be entitled to" vote—are each and all mandatory provisions, and must be strictly complied with by the respective officers upon whom the duty is devolved of making the order and proclaiming tire election, the enactment itself being in its nature a penal statute, which must in every particular be strictly construed; that the placing of an election booth a few feet from .the residence district is as fatal an irregularity, in considering ■the validity of the election, as though it were placed miles away and in another párt of the city; and that it is not incumbefit upon the petitioner to satisfy the court by the evidence, that this or any other irregularity by the failure of any other duty on the part of any of the officers, thus made mandatory by the strict terms, of the law, resulted in either depriving the electors who would have voted, from yoting, or caused their *333 votes to be rejected; or that if the election had been regular in these respects the result would have been changed.
On the other hand, it is insisted by the contestee that the' irregularities complained of, and which are conceded to have occurred, were not fraudulent, nor were voters misled or thwarted, or in any wise impeded in easting their ballots freely, nor were the irregularities in any wise prejudicial, nor would the results have been different had the irregularities, in respect to the placing of the booth and the receiving of the ballots, been strictly in compliance with the letter and terms of the statute.
The case has been very ably presented to the court in argument by learned, industrious and exceedingly capable counsel on both sides. As already stated, the case for the contestor is urged chiefly upon the proposition that the misplacement of the voting place and booth, by the direct order of the common pleas judge and the proclamation of the mayor, was such a fatal irregularity as to render the election on the 7th day of July, 1904, absolutely void, even in the absence of any fact disclosing bad faith, or deprivation by any elector of the exercise of,.his privilege on that occasion, and in the absence of any showing-that the result, but for this misplacement of the booth, would have been changed.
It is further contended by the contestor that the order defining the limits of the residence district in which the vote is to be taken, based as it is upon the petition of the qualified electors of said district, constitutes it an arbitrary and artificial district, by no means a territory bounded by any well known political or geographical lines, and the statute being: penal in its sanction and character, renders the certainty that the polling place or places shall be in, or within, such district absolutely mandatory, imposing a duty upon the public officers which can only be legally exercised in strict conformity to the' terms of the statute itself. It is insisted that' any other view' would presumably lead to confusion and uncertainty among the electors. There might be a case in which an election was simultaneously being held in another designated residence district, bordering upon the residence district in question. .While it is not claimed that any simultaneous election was being held in *334 an adjoining residence district on the subject of local option, it is insisted that the very possibility of such mischance and confusion reflects upon the importance, stringency and rigorous requirement that the polling place, or places, shall be clearly designated as within the district.
The situation, in the opinion of the court, does not demand that a more minute or detailed statement of the merits of this contest be given at this time. It would be an unwarrantable and presumptuous effort on the part of the court to follow the legal acumen and forcible logic which was manifested in the argument.
An examination of the law on the contest of elections, involved in this controversy, as it is presented in the judicial history of the United States, and by the adjudicated cases, is not a satisfactory excursion. The doctrine of the courts upon what constitutes a void, or voidable election, is not thoroughly settled. I have examined with great interest many of the leading cases presented by counsel in their arguments and briefs. Comparatively few decisions of the courts -of Ohio have been cited by counsel.
It would be useless and unsatisfactory for the court to indulge in any critical animadversions upon the legislation of the state of Ohio, in its attempt to regulate the traffic in intoxicating liquors. The last of these legislative efforts has produced an act which is becoming every day more fruitful of contentions in the legal forum, and will continue to fill the calendars of courts with controversies, probably, for many years to come. It is my purpose, in stating the brief conclusions which the court has reached, to point out only the divergent lines upon which the decisions seem to be marshaled. It may be stated, as a general proposition, that very many, if not all, of the cases cited, are decisions rendered in construing special acts and statutes of the several states from which the cases are reported, and in determining the weight and authority, therefore, of such adjudications, it is absolutely necessary to understand the facts and legislative enactments and powers which are dealt with by the court. .
■ One of the strongest eases cited by the eontestor is the decision of the Supreme Court of Illinois, rendered in 1893, the *335 ease of Snowball v. The People, ex rel, 147 Illinois, page 260.
This was an election for a member of a school board, the election being appointed and fixed by order Of the board of education of a school district in St. Clair county, Illinois. In this ease, the law required the election to be held in a certain school district, the territory lying partly within, and partly without, the municipal corporation. Quoting now from the statement made in the report, I read as follows:
' ‘ ‘ The board of education also caused notices of the election to be posted, but did not at its said meeting or at any other time fix any polling place within the territory lying outside of the city, and appointed no judges or clerks for said territory. At eight o’clock on the morning of the day of election the president of the board of education, with the consent of the other members, repaired with the ballot box to the Allerton House, located in said outlying territory, and, in accordance with his statement to them that they had a right to do so, seven voters there assembled, selected two of their number as judges and one as clerk, who ¡were duly sworn by a notary, and took charge of the ballot box and east their own votes, and received those of the others; and, at said Allerton House, seven votes were cast for appellant, and none for relator. ” ,
In deciding the case, Mr. Justice Magruder states the'', following facts on page 267:
“By an act of the Legislature approved and in force on March 23, 1887, and which was in force when this election was held, it is provided that, in all elections thereafter held for school district purposes, in any school district lying partly within .and partly without any city which had adopted or might adopt the election law of June, 1885, above referred to, the legal authorities of such school district ‘shall locate the pollipg place or places, appoint the judges and clerks, and otherwise conduct the election in that portion or part of the * * * school district that lies without such city,’ etc. (3 Starr & Cur. Ann. Stat., page 561; Hurd’s Rev. Stat. of 1885, page 665). It is conceded that the school district in the present ease is under the control of a board of education. The legal authority, therefore, whose duty it was to locate the polling place or places was the board of education. By the provisions of the school law it was required that the board of education should give at least ten days previous notice of the time and place of holding the election. As has already been stated, the- board did not fix *336 the polling place or places, and, as we understand the facts, the notices posted did not designate any place for holding the election.
“It is essential to the validity of an election that it be held at the time and in the place provided by law (McCrary on Elections, 3d Ed., Sec. 118). "Where the time and place are not fixed by law, but are fixed by some authority named in the statute, it is essential to the validity of the election that the time and place be fixed by the very agency designated by law, and none other (Stephens v. The People, 89 Ill., 357). In Williams v. Potter, 114 Ill., 628, where it appeared that the statute required the polling places, when more than one was demanded by the excess of the number of voters over those voting at the last preceding general election, to be fixed by the county board, and that a school house, where certain votes were cast at an election, had not been designated or appointed by the county board as a polling place, it was held that such votes could not be CQUpted; and the following language used in that case is applicable to, and decisive of, the case at bar: ‘A number of voters of the township assemble at a place unauthorized by law, organize and hold an election for town officers, and the question is, shall the votes cast at such election be counted? * * * It is clear, upon the plainest principles of law, they can not be so counted. • The whole thing, however, well intended was, in contemplation of law, illegal and void’ (The People v. Gochenour, 54 Ill., 123).”
It will be observed, by even a superficial view of this decision, that the irregularities and omissions of duty on the part of the board of education, the manner of conducting the election and the few votes that were east, all concurred to establish a strong case of prejudice, and the whole purposes of the election were, by these irregularities and omissions, substantially thwarted, and the election was rendered abortive. It is but another illustration of the truth of the statement that, in order to understand the force-and effect of such adjudications, not only the special statutes which are being administered must be fully understood, but the facts and circumstances of the special case must be kept constantly in view. It is, for this reason, very difficult to adduce any general principle or rule out of these conflicting decisions.
The state of the law, as touching liquor legislation and the application of local option in the state of Texas, is thoroughly *337 settled in favor of the contention of the contestor. The case, Ex parte Conley, decided by the Court of Criminal Appeals of Texas, and reported in the 75 Southwestern Reporter, page 301, is a case which clearly demonstrates the fact that, the law. as settled in Texas, is peculiar and apart from the tenor of decisions in other states. I will simply quote a paragraph from the decision of the presiding judge:
“The main proposition suggested for reversal is that the local option law is invalid because the notices of the election were not posted in accordance-with the terms of the statute. Four of the five notices were posted the requisite number of days. The fifth was not. The election was conceded to be fair, and that no actual injury resulted from the failure to post the fifth notice the requisite number of days. So we have the proposition, sharply put, that the law is invalid by reason of the failure to post one of the five notices the legally required number of days (twelve). The fifth notice was posted nine days. Appellant contends this renders the law invalid, although the election was conceded to be fair; that the statutory prerequisite steps to put the law in operation are mandatory, and without a compliance therewith the law would be invalid; that the posting of the notice is necessary before the people have the right to assemble and vote on the question'd local option. It is asserted, and it may be true, that the authorities in the different states are divided upon this proposition. However, they are not divided on the proposition in Texas, unless it is made so by the recent case of Norman v. Thompson, 72 S. W., 64; 6 Tex. Ct., 641. The question is not novel, and, in one form or another, has frequently been before the courts of last resort in this state. In Kramer’s Case, 19 Tex. App., 123, it was said: ‘If the election was not conducted in accordance with the requirements of the law, it is void, and not merely voidable, and all proceedings had under and by virtue of such void election are absolutely void, and may be questioned not only directly, but collaterally.’ ”
It seems, from this decision and from others in the state of Texas, that different municipalities and places in Texas may adopt what is called the local option law, by virtue of a general enabling statute, so that the election results virtually in ap act of legislation; whereas, under our system, an election is merely the application or administration of a law, general in its operation throughout the state wherever invoked. The rule as to the formality and regularity of an election, then, held under our *338 statute, should be deduced from the statute itself, and from the general principles of law relating to elections, where the same are applicable (.Black on Intoxicating Liquors, Section 97). It, therefore, appears to be the duty of the court to scan closely the decisions of our own state courts, and so far as they are applicable to the issue involved, give them force and effect, rather than the decisions of other states which have special reference to the policy and legislation of such states.
The case of Sidney B. Foster v. William D. Scarff, 15 O. S., 532, is cited by counsel as a strong case in support of the contestar’s contention. In this case the proclamation of an election, which the law required to be made by the sheriff, failed to announce that a probate judge was to be elected in the county of Logan, state of Ohio. This failure to give publicity to the election of a probate judge resulted in a very small vote for the person who was a candidate for the office, the people generally believing that there was no vacancy to be filled in that office. The whole number of votes cast in the county was 4,339. Nine hundred and thirteen votes were east for the person who claimed the election as probate judge, and in four or five Wwnships out of the seventeen, no votes were taken at all on the subject. The decision of the court, stated in the syllabus, is as follows:
“Where a vacancy is about to occur in the office, of probate judge, by reason of the expiration of the term of an incumbent of that office, and the sheriff, in pursuance of the statute, in due time prior to the day for the regular election, published his proclamation, giving notice of such election, and enumerating therein all the state and county offices to be filled at such election, except the office of probate judge, in respect to which the proclamation is silent; and, by reason of such misfeasance of the sheriff, the great body of the electors of such county are misled, and have no notice, either official or in fact of an election to fill the office of probate judge; but, nevertheless, a small number of the electors of the county, less than one-fourth of the whole number of voters' at that election, cast their votes for a single candidate, and no votes are cast for any other—such attempted election is irregular and invalid.”
But the court especially limits the ease to the facts involved, and on page 537 the judge deciding the case uses the following language:
*339 “In deciding this ease, however, we do not intend to go beyond the case before us, as presented by its own peculiar facts. We do not intend to hold, nor are we of opinion, that the notice by proclamation, as prescribed by law, is per se, and in all supposable eases .necessary to the validity of an election. If such were the law, it would be in the power of a ministerial officer, by his misfeasance, always to prevent a legal action. We have no doubt that where an election is held in other respects by law, and notice in fact of the election is brought home to the great body of the electors, though deprived through meajis other than the proclamation which the law prescribes, such election would be valid. But where, -as in this case, there was no notice, either by. official proclamation or in fact, and it is obvious that the great body of electors were misled, for want of the official proclamation, its absence becomes such an irregularity as to prevent an actual choice by the electors, prevents an actual election, in the primary sense of that word, and renders invalid any semblance of an election, which may have been attempted by a few, and which must operate, if it be allowed to operate at all, as a surprise and fraud upon the rights of many.”
The court has examined the leading authorities presented by counsel in their exhaustive, diligent and searching arguments in this case. The conclusion to which the court seems forced to arrive will not justify an attempt to analyze, or even present a condensed statement of the force and effect of these decisions. In New York, Illinois, California, Missouri and other states, where there is some slight conflict,' it appears to the court that the stronger and best adjudications establish the proposition that the important question in such cases is, have the qualified electors been deprived of a fair opportunity of expressing their preference; and that mere irregularities which do not affect the result should be disregarded (31 Cal., 173; 58 Cal., 209; 8 N. Y., 69; 32 Texas Criminal Appeals, 553; 78 Ill., 170).
AVe are not without some judicial authority in the state of Ohio in construing the Brannoek Law, and it appears that there is some conflict even in our own inferior courts. On the 3d day of October, 1904, the Honorable Probate Judge of Franklin County, Ohio, in the case of John F. Cole v. The City of Columbus, 2 N. P.—N. S., 563, decided that the requirement of the Brannoek Law that the mayor or common pleas judge, with whom the petition for a special election is filed, “shall order a *340 special election to be held in not less than twenty, nor more than thirty days from the filing of the petition,” is mandatory, and that an election held thirty-one days thereafter is void, and will be set aside.
The judge, in his decision, enters into a full and exhaustive examination of the authorities, and concludes with the following language:
“Surely the framers of the ‘Brannock Law’ and the Legislature which passed it,' intended that some meaning should be given to the words ‘in not" less than twenty days and not more than thirty days from the filing of such petition/ they intended that the law should be operative, and that courts should so construe it as to malee it not only operative, but effective, and give the petitioners some remedy against any one seeking to obstruct its operation at any point.”
In deciding the case, the honorable judge overrules'two decisions made by the common pleas court, holding that the time limit provided for in the statute was merely directory. These decisions are found in 2 N. P.—N. S., 469 and 245. The learned judge overruled the superior court because the judges gave no reasons for their opinions, and cited no authorities. My attention was called to this case in the probate court by counsel for the contestor, after the argument, the claim being made that, in respect to the section as to calling the election, the requirement was of the same nature as that requiring the polling places to be designated within the district, and that if, in one case, the law was mandatory, it could not be merely directory in the other.
The Court of Common Pleas of Montgomery County decided June 15, 1904, In re Petition for Election in Precincts C. D cuud E, Fourth Ward, Dayton, 2 Nisi Prius—New Series, 245, that the provision of Section 1 of the Brannock Law. limiting the time within which the mayor or judge of the common pleas court may order an election to not less than twenty nor more than thirty days, is not mandatory, but directory.
Nothing more aptly illustrates the vague, confused and uncertain legislation of the Brannock Law than this decision of the Court of Common Pleas of Montgomery County. The grave issue was made and presented in the case, that bill boards oc *341 cupying the frontage of lots within a proposed local option district was “property devoted to manufacturing, mercantile, or other business purposes,” in the meaning of the statute. The court set about deciding whether bill boards and fences upon whiph advertising matter had been placed constituted residence or business property. Thus we have in Ohio two decisions of recent date, and by two several courts, directly in conflict on the point that this Section 1 of the Brannock Law, which fixes the time for the election, is, in one case mandatory, and in the other, it is directory merely.
In this proceeding the constitutionality of the Brannock Law is challenged. It is not the purpose of the court to enter into any original construction of this proposition. The law has come before some of the courts in this state several times on the question of its constitutionality, and, as I am informed, that question has been settled in favor of the law. On July 1, 1904, the Circuit Court of Franklin County rendered a decision in the case of Jeffrey, Mayor v. The State of Ohio, ex rel, 4 Circuit Court—New Series, 494. The law was challenged in this case on the ground that it contravened Section 1, Article V., of the Constitution, which provides that every citizen having the qualification of an elector shall be entitled to vote at all elections. It was contended that this law came in conflict ■ with this provision in the qualification of the electors, restricting the body of the electors to those in municipal corporations having registration to registered voters only. The court sums up its decision in the following language:
“The Brannock Law is not rendered invalid by reason of the possibility that certain persons may be disfranchised at an election thereunder, by reason of the construction which may be given to Section 2926 of the election law. Courts will presume that the true construction of the statute will be adopted, and the election so conducted as to give every elector an opportunity to register and vote.”
As cited by counsel for the contestee, two of the laws preceding the Brannock Law, attempting to regulate the traffic in intoxicating liquors in the state of Ohio, known respectively as the Beatty Law and the Beal Law, have come under the scrutiny of the inferior and Supreme Court of the state of Ohio, as *342 touching their constitutionality. The Beatty, or Township Law, was upheld in the case of Gordon v. The State, 46 O. S., 607, and Stevens v. State, 61 O. S., 597. The Beal Law, so called, came before the court of common pleas and circuit court in a number of unreported cases, but its constitutionality urns directly challenged in The State, ex rel Lloyd, v. Dollinson, in the Circuit Court of Guernsey County, and its constitutionality was sustained.
As a general practice it may be said to be as ungracious as it .is inappropriate, for a court of inferior jurisdiction to deal with the constitutionality of any law when the same is merely dubious and uncertain. One of the most serious strictures which can be made upon the Brannock Law is the attempt to define what shall constitute the residence district in which the principle of local option can be applied. The erection of such a district is left to the unskilled hand of the forty per cent, of electors who see fit to frame the petition. The limits and lines of such district are entirely arbitrary and artificial, and the ease and facility by which districts may be laid off in such a way as to create void places, called “pockets,” in which the citizens are substantially disfranchised on this question of local option; involved, confused and ambiguous construction of this provision of the law, as well as other features, lays this law open to serious impeachment.
No scheme of legislation better illustrates the futility, as well as danger, of enacting laws in the heat and intensity of political passion. This law was ground out between the upper and nether millstone of antagonized public sentiment, dividing the Legislature along lines purely partisan and vindictive, and finally modified by the supervision of pliant and trimming politics.
The court, however, can not say that the law is either unconstitutional or invalid.
By the 11th section of the Brannock Law, it is made the duty of the probate judge, upon the filing of the petition for the contest, to issue a summons addressed to the mayor of such municipal corporation, of the filing of such petition, and directing him to appear in said court on behalf of said residence district at the time named in the summons, which time shall not be more *343 than twenty days after the election, nor less than five days after the filing of such petition. Thus, the contest of an election becomes virtually, under our law, an action inter partes, and the burden of establishing the irregularity under this law, which
To me, the alarming and grave part of this section is that is claimed to render the election invalid, is upon the eontestor. part which says that the probate judge shall have final jurisdiction to hear and determine the merits of the proceedings. Some relief is granted in the following clause of this section, which states that in all respects in the procedure of the hearing, he shall be governed by the law providing for the contest of the election of a justice of the peace, so far as such law is applicable. The attention of the - court is called to this statute providing for the contest of an election of a justice of the peace. Section 576 of the Revised Statutes provides that “no election of a justice of the peace shall be set aside by the freeholders (called to try the case) merely because illegal votes have been given at such election, if it appears that the person whose election is contested has the greatest number of the legal votes given at such election, after deducting all illegal votes given when there is no evidence for whom such illegal votes were given, as well as all illegal votes which are shown to have been given for the person whose election is contested. ’ ’
There is at least a slight suggestion in this statute, so far as it is applicable to the case at bar, that unless it clearly appears to the court that the irregularity or omission in the preliminary duty of the officer appointing the election, resulted in the vote which determined the election, it is not so material a defect as to render the election void.
The -polling place at the corner of Giddings and Lexington avenues was sought by electors of the district which was holding the election. It was in plain view, and no other election was proceeding in any contiguous district or territory. It was fifteen feet beyond the easterly line of the district. There are no facts to justify the conclusion that any elector was misled or confused as to the proceedings on the 7th day of July, 1904, at that election. Considering the number of electors in the district, the election was carried by a decided majority. And now for the probate judge, in the absence of any facts showing fraud *344 or prejudice to the public, or individuals, of any sort or kind, to set aside the will of the people 'of the district, thus expressed, would be an exercise of judicial power under this statute which, in my judgment, would be grossly unjust and unreasonable.
Olds & Willett and Wilcox, Gollister, Hadden & Parks, for the petitioner.
Newton D. Baker, City Solicitor, for the Mayor of the City of Cleveland.
Albert V. Taylor, for qualified electors of the residence district, defending the election. ’ "
There are other points made in this controversy on the question of the regularity of this election, which were not strenuously urged by counsel in argument, but which have received some attention on the part of the court.
It is claimed that the district was not properly and clearly bounded by the description in the petition of forty,per cent, of the electors, nor in the order or proclamation. No facts are brought to the attention of the court, and the statute which requires a description of a residence district is so involved, confused and ambiguous that it is very difficult to tell exactly what it does mean. •
The illegal voting, upon which evidence was adduced, consisted largely in the irregularity of failing to record the name • of the voter as his vote jvas cast early in the election, in the voting place which was admitted to have been located within the residence district in question, and allowing the voter to write his own name upon the secondary stub. But there is no claim or pretense as to what number of irregular votes were thus cast, or whether any person was prevented from voting by this irregularity, or that the result of the election was affected one way or the other, and, as I understand counsel, it is admitted in argument that they do not urge this irregularity as one of the reasons for contesting the election.
The petition, therefore, to contest the election on the 7th day of July, 1904, in the 16th District, so-called, is hereby dismissed at the costs of the petitioner.