## J. C. CUNNINGHAM v. THE STATE.

No. 14125.   Delivered November 4, 1931.
State's Rehearing Denied January 6, 1932.

The opinion states the case.

*Campbell, Myer & Foster,* of Houston, for appellant.

*O'Brien Stevens,* District Attorney, and *E. T. Branch,* both of Houston, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The conviction was for violating the provisions of article 1370, Penal Code, making it an offense to knowingly permit cattle, etc., to run at large in territory where the stock law had been adopted. The punishment was assessed at a fine of $101.

An election was held in Harris county on Saturday, May 24, 1930,

for the purpose of determining whether the stock law should become operative throughout the entire county. After a canvass of the returns had disclosed that a majority had voted for the adoption of the law, the county judge duly issued his proclamation declaring the result. After the expiration of thirty days from the issuance of the proclamation, appellant permitted his cattle to run at large in the county. See article 6962, R. S. 1925.

Appellant contends that the law was not operative because notice of the election was not published throughout the period of time prescribed in article 6959, R. S. 1925. The state argues that the demand of the statute was met by one publication of the notice in a newspaper at least thirty days before the election. The notice was published in a daily paper in the city of Houston once a week for four successive weeks, beginning on Tuesday, April 22, 1930, and ending on Tuesday, May 13, 1930, the period between the first and last publication being twenty-two days. No other issues of the paper carried the notice. The election was held eleven days after the last publication of notice. The weekly publications covered a period of less than thirty days. The pertinent part of article 6959, R. S., 1925, reads as follows:

"Immediately after the passage of an order for an election by the commissioners court, the county judge shall issue an order for such election and cause public notices thereof to be given for at least thirty days before the day of election, by publication of the order therefor in some newspaper published in the county. * * *."

The opinion is expressed that the preposition "for" in the connection in which it is used in the statute has the same meaning as the word "during". Stated in another way, when the word "for" is put in connection with time, it signifies of itself duration. This is the sense in which the term, when used in the connection mentioned, is generally understood. See article 8, Penal Code. Language similar to that employed in our statute has been frequently construed by the courts. An examination of the cases discloses that the weight of authority supports the construction we have adopted. Gary v. Martin, 70 Mont., 587, 227 Pac. Rep., 573; Myakka Co. v. Edwards, 68 Fla., 372, 67 South., 217; Early v. Doe, 16 How., 610, 14 L. Ed., 1079; Leach v. Burr, 188 U. S., 510, 47 L. Ed., 567; Wilson v. Northwestern Life Ins. Co., 65 Fed., 38; Bacon v. Kennedy, 56 Mich., 329, 22 N. W., 824; State v. Cherry County, 58 Neb., 734, 79 N. W., 825; Finlayson v. Peterson, 5 N. D., 587, 67 N. W., 953; Dever v. Cornwell, 10 N. D., 123, 86 N. W., 227; Watson et al. v. City of Salem, 84 Ore., 666, 164 Pac., 567; Whitaker v. Beach, 12 Kan., 493; McCurdy v. Baker, 11 Kan., 111; 3 Words and Phrases, 2858; 2 Words and Phrased 2nd Series, 594. Illustrative of the view of the courts construing statutes similar to ours, we note Early v. Doe, supra. In that case notice of the sale of property was published

in a newspaper twelve times in successive weeks, the first insertion being on Saturday, the 26th of August, and the last on the 15th of November, the day of the sale. The result was that notice was given for only eighty-two days. The statute regulating notice required that it be given by advertisement in a newspaper "once in each week, for at least twelve successive weeks. In reaching the conclusion that the notice given failed to meet the demand of the statute, the Supreme Court of the United States used language as follows:

"But when the legislator has used the words, for at least twelve successive weeks, we cannot doubt that the words, at least as they would in common parlance, mean a duration of the time that there is in twelve successive weeks or eighty-four days. Every statute must be construed from the words in it, and that construction is to be preferred which gives to all of them an operative meaning. Our construction of the statute under review gives to every word its meaning. The other leaves out of consideration the words 'for at least,' which mean a space of time comprehended within twelve successive weeks, or eighty-four days. The preposition, for, means of itself duration when it is put in connection with time, and as all of us use it in that way, in our every-day conversation, it can not be presumed that the legislator, in making this statute, did not mean to use it in the same way. Twelve successive weeks is as definite a designation of time, according to our division of it as can be made. When we say that anything may be done in twelve weeks, or that it shall not be done for twelve weeks, after the happening of a fact which is to precede it, we mean that it may be done in twelve weeks, or eighty-four days, or, as the case may be, that it shall not be done before. The notice for sale, in this instance, was the fact which was to precede the time for sale, and that is neither qualified nor in any way lessened by the words 'once a week,' which precede in this statute those which follow them, 'for at least twelve successive weeks.'"

In Whitaker v. Beach, 12 Kan., 492, supra, the court considered language practically identical with that used in our statute. The statute regulating the notice to be given of a sale of real estate at a sheriff's sale required that notice be given "for at least thirty days before the day of sale" by advertisement. In construing the statute, the court, speaking through Justice Brewer, said: "The question turns upon the force of the word 'for', in the language quoted. It seems to us to be nearly equivalent to the word 'during'. Such is a common signification of the word, and unless it have that meaning here, it is entirely superfluous. If the legislature intended that a single insertion in the paper should be sufficient, they would have expressed this intention much more clearly by omitting 'for', and saying only, 'at least thirty days.' It is suggested by counsel that the language used in our former opinion indicates that the sale must be made on the very day of the last insertion, and therefore

must always be fixed for the day of the issue of the paper. It does not seem to us that our language justifies any such construction. The sale may be appointed by the sheriff for any day except Sunday, and the notice must be first published at least thirty days prior thereto, and continued in each successive issue of the paper up to the day of sale. In other words, in every issue of the paper between the first insertion of the notice and the day of sale, the notice must appear."

In Watson et al. v. the City of Salem, supra, the charter provision of the City of Salem, which the court considered, required notice "by publication for not less than five successive days" in a daily newspaper. In construing the provision, the Supreme Court of Oregon said:

"The term 'for' and the words 'not less than' appear in the quoted provision. When used in the connection in which we now find it the term 'for' means 'through; throughout; during the continuance of.' Century Dictionary. If the charter read that the notice must be published 'for five days,' by the overwhelming weight of authority it would be interpreted to mean a publication through; throughout; during the continuance of five full days. * * * The words 'not less than,' like the language 'at least,' signify 'in the smallest or lowest degree; at the lowest estimate'; and legislation prescribing 'not less than' or 'at least' a specified number of days is usually construed to mean clear and full days for the specified period of time."

Our construction of the statute under consideration will not permit us to sustain the contention of the state that one publication of the notice meets the demand of the law. In adopting the construction of the judicial precedents to which reference has been made, it must be held that the meaning of the statute is that the notice shall be published during at least thirty days before the day of election. Stated in a different way, the notice must be first published at least thirty days prior to the election, and continued in each successive issue of the paper up to the day of the election. The fact that the great majority of counties in this state have no daily paper would indicate that it was not the intention of the legislature to require publication in a daily paper. A weekly paper, in our opinion, would answer the requirement of the statute, but the publication must continue in each successive issue of the paper during at least thirty days before the day of election. In Lawson v. Gibson, 18 Neb., 137, 24 N. W., 447, the Supreme Court of Nebraska, in construing a statute in practically the same language as ours, held that one publication was insufficient, and went on to say that the statute meant that the notice should be published during at least thirty days before the sale,—but not necessarily in a daily paper. We quote from the opinion as follows:

"The question here involved was before the supreme court of Kansas in Whitaker v. Beach, 12 Kan., 493; and at was held that the notice

must be first published at least 30 days before the day of sale, and continued in each successive issue of the paper to the day of sale. The construction given by that court to the word 'for,' as equivalent to 'during' in connection with the words 'at least thirty days before the day of sale,' we think is correct, and we adopt that construction. The meaning of the statute, therefore, is that the notice shall be published during at least thirty days before the day of sale. Not necessarily in a daily paper,— a weekly, no doubt, will answer the requirements of the statute,—but the publication must be continued for at least 30 days."

It follows from our discussion of the statute in question that we are constrained to hold that notice was not published for the period of time demanded by the law.

Failure to publish the notice of election for the time required by the statute invalidates the election. Ex parte Conley (Texas Crim. App.), 75 S. W., 301, and authorities cited. The fact that the election may have been fair and that the voters had actual notice of the election, would be immaterial. Ex parte Conley, supra. We are not unaware of the announcement by a number of our Courts of Civil Appeals that failure to comply with a statute as to notice of a special election will not render the election void if the voters had notice of the election and participated therein, so that the result of the election was not affected by the failure to give notice in the manner prescribed by law. See State v. Troell (Texas Crim. App.), 207 S. W., 610, and authorities cited; Norman v. Thompson, 30 Texas Civ. App., 537, 72 S. W., 64; Hill v. Smithville Independent School District (Texas Civ. App.), 239 S. W., 987. In Ex parte Conley, supra, this court took note of the fact that the Court of Civil Appeals in Norman v. Thompson, 30 Texas Civ. App., 537, 72 S. W., 64, had held the statute directory which regulated the giving of notice of local option elections. A majority of the court, in an opinion written by Judge Davidson, declined to adopt the holding of the Court of Civil Appeals, and adhered to the holding of this court that the statute was mandatory. We quote from the opinion of the court in Conley's case as follows:

"If the failure to post the notices or to hold the election within the prescribed time—not less than 15 nor more than 30 days—renders the election void, then the fact that it may have been fair, and that no actual injury resulted in the failure to comply with these prerequisites of the law, cannot render the law valid. A matter that is void is void. If simply because the election was fair, and the people may have turned out and voted, would be sufficient answer to the failure to post the notices or to hold the election at any time not less than 15 nor more than 30 days, then it would be a fair and legal election if none of the notices were posted, and although held before the 15 days or after the 30 days. The fact that there may have been a political campaign, which

stirred the people and caused them to go to the polls on a certain day by common consent, whether any of these orders were entered or notices published, etc., would make the election valid on the ground of fairness, because every citizen in the county could have voted, and the notice given by the speakers from the rostrums would notify them of the fact that they had agreed to hold the election at a certain time, whether or not that election was ordered by the commissioners' court. The Legislature have seen proper to prescribe these rules in obedience to the mandates of our constitutional provision. They might have prescribed other methods or rules, but they did not. This court would not be authorized to prescribe other and different rules than those fixed by the Legislature, no more than the commissioners' court or the people themselves. One would be as powerless as the other, or as powerful as the other. The result may have been the same, but one is legal and the other is void, simply because one follows the law and the other has nothing to support it."

The principle in the case at bar is the same as that involved in Ex parte Conley, supra, and the numerous decisions by this court prior to the decision in Conley's case. These cases have not been overruled. We see no reason to announce a rule at variance with their holding.

The judgment is reversed and the prosecution ordered dismissed.

*Reversed and prosecution ordered dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In his motion for rehearing state's counsel takes issue with the interpretation of the precedents cited in the original opinion upon which the decision rests. Attached to the motion is a letter written in 1921 by one who was at that time Assistant Attorney General, to an individual expressing an opinion contrary to the reasoning upon which the reversal of the judgment was based. The letter apparently has no official standing, contains no citation of authority and embraces no argument. There is also attached to the motion a copy of an opinion issued by the Attorney General's Department of this state some ten years ago which bears evidence of thought and research. The opinion, however, deals with a subject different from that covered by this appeal, and if we comprehend it, makes no announcement in conflict with the conclusion reached in the original opinion in this case. Before the conclusion of this court was reached and announced, the question of law upon which the case turns was given careful investigation, and the decision rendered reflected the judgment of this court after full deliberation. After our re-examination of the subject in the light of the

motion for rehearing, we are constrained to regard the former announcement as the proper disposition of the appeal.

The motion is overruled.

*Overruled.*