J. T. SHRADER et al., Appellants,

v.

W. G. RITCHEY et al., Appellees.

No. 6161.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 17, 1957.

Rehearing Denied Nov. 20, 1957.

Cain, Taylor & Cain, Liberty, for appellant.

Robert F. Atkins, Coldsprings, for appellee.

HIGHTOWER, Justice.

This suit was instituted in the District Court of San Jacinto County by J. T.

Shrader and other freeholders of said county against the Honorable W. G. Ritchey, County Judge, and other county officials to void a stock law election held in a subdivision of San Jacinto County under the provisions of Title 121, Ch. 5, of the Revised Civil Statutes of Texas, Vernon's Ann.Civ.St. art. 6928 et seq. The contestants also sought to have the County Judge permanently enjoined from placing into effect, by proclamation or otherwise, such stock law. The case was tried before the court without a jury and judgment was rendered that the election was in all things valid and that contestants (appellants herein) be denied all relief prayed for.

By its three points of error, the appellants contend: (1) that the election was void for the reason that notice of it was not published for thirty full days prior to said election as required by law; (2) that the election was void for the reason that the petition, order of the Commissioners' Court, and order of the County Judge for the election were insufficient, in that the metes and bounds description of the subdivision wholly failed to close; (3) that the election was void for the reason that the order of the County Judge calling said election was defective and confusing as a notice in that it did not set out the propositions to be voted on and in the manner required by the legislature.

■■■ The parties stipulated that the election notice was published in the San Jacinto Times, a weekly publication of San Jacinto County, on four different occasions. These were November 23rd, November 30th, December 7th and December 14th, 1956. There were no notices contained in subsequent publications prior to January 5, 1957, the day of election. The result was a total elapsed time of 22 days between the first and the last publication. The election was held January 5, 1957, as aforesaid, for an elapsed time of 43 full days between the first publication and the day of election. Article 6959, Revised Civil Statutes, relating to stock law elections, calls for public notices of such elections to be made by the County Judge by publication of the order therefor in some newspaper published in the county, if there be one, for at least 30 days before the day of election. The appellants rely heavily on the opinion of our Court of Criminal Appeals in the case of Cunningham v. State, 119 Tex.Cr.R. 572, 44 S.W.2d 739, wherein the exact question embraced in appellants' first point of error was presented. That court held the preposition "for" in the statute requiring notice of a stock law election for 30 days before the day of election to mean "during". That court further held 22 days publication to be insufficient and construed Article 6959, supra, to require that notice must be published at least 30 days prior to the election and continue in each successive issue of the paper up to the time of election, notwithstanding the fact that 31 full days had actually elapsed between the day of the first publication and the day of the election. We have also noted that most of the decisions of the Court of Criminal Appeals, in such instances, require a strict compliance with such construction of such statutes. Our Supreme Court and Courts of Civil Appeals have declined to recognize this rule of strict compliance in such instances and have applied the rule of "substantial compliance". The appellants appear to concede, notwithstanding their reliance on the Cunningham case, that the rule of "substantial compliance" must prevail in this court's determination of the issues, and they have submitted several decisions in such connection, including some from other jurisdictions which we decline to consider in view of this state's well established law on the question. This rule entails the proposition that insofar as the statutes require the election to be by ballot, the day of the election and the place where the election shall be held, they are mandatory; that other provisions of the law prescribing the conduction of and the matter of publishing notices, etc., are directory only, and mere irregularities in their observance, which have not prevented the voters from exercising freely and fairly

their right of suffrage and from having their votes properly counted must be treated as informalities which do not vitiate the election, especially when there is no law providing that such irregularities shall render the election void; that a substantial compliance with these directory provisions of the law, to the extent that it could be reasonably presumed that the failure to observe the strict letter of the law did not affect the result of the election, is sufficient. Waters v. Gunn, Tex.Civ.App., 218 S.W.2d 235, ref. n. r. e.; Turner v. Lewie, Tex. Civ.App., 201 S.W.2d 86, error dism.; Lightner v. McCord, Tex.Civ.App., 151 S.W.2d 362, n. w. h., and cases cited; Scurlock v. Wingate, Tex.Civ.App., 283 S.W. 307, n. w. h.; Norman v. Thompson, 30 Tex.Civ.App., 537, 72 S.W. 64.

Appellants' petition contained allegations to the effect that the result of the election was materially changed by reason of such irregularities as are set out in their above three points of error. They had the burden of establishing the probability that the irregularities complained of affected the final results of the election. This they failed to do. The record does not reveal the actual number of persons qualified to vote in the subdivision affected. It does reveal that the stock law carried by a majority of 43 votes —325 for and 282 against. There are no findings of fact or conclusions of law of the trial court in the record, and we presume that the trial court determined in holding "the election * * * is in all things valid" that the results were an expression of a substantial number of the qualified voters in that subdivision of the county. Several witnesses testified in regard to the published notices and all failed to state that they even thought the manner and extent of the publications misled, confused or otherwise affected the results. To the contrary, however, there was much testimony to the effect that it was well known, in and around the subdivision in question, that the impending election was forthcoming as declared by the various orders and publications involved. We hold that the publication aforesaid of notice of the election was such a

substantial compliance with the requirements of Article 6959, supra, as did not justify voiding the results of the election. The appellants' first point is overruled.

■ Under its second point the appellants show that the metes and bounds description of the subdivision affected wholly failed to close. The petition for the election, the order of the Commissioners' Court and order of the County Judge, in defining the boundaries of the subdivision affected, all declared the beginning point to be "on the Trinity River where Stephens Creek runs into same: Thence up the meanders of Stephens Creek, it being the line to State Highway No. 156." It was established that Stephens Creek actually emptied into McGee Creek at a point about one mile from the Trinity River and that from such point McGee Creek then emptied into the Trinity River. It appears to be uncontradicted that this one mile stretch of McGee Creek was commonly referred to in and around the community in question as both Stephens Creek and McGee Creek—some referring to it as Stephens and some as McGee. All of the appellants who testified stated that they were not misled by this description in casting their ballot and there was no testimony to the contrary. There was much testimony that McGee Creek often went dry in the summer months and that Stephens Creek continued its flow as aforesaid into the Trinity River. This was the only manner and place that Stephens Creek emptied into the Trinity River. Whether it emptied into the Trinity River via a creek bed commonly and interchangeably known as Stephens Creek and/or McGee would seem of little concern where it fails to appear that any of the qualified voters were misled by the description complained of or failed to cast their ballots by reason thereof. The appellants' Second point is overruled.

■ In connection with appellants' third point, the record reflects that the order of the County Judge, ordering the election, stated that the issue to be determined was whether hogs, sheep and goats should be permitted to run at large in the said subdi-

vision. It further stated that voters desiring to prevent the animals designated in this order from running at large shall place upon their ballot the words "for the stock law" and those not in favor of allowing such animals to run at large shall place the words "against the stock law". The issue as actually submitted on the ballots was "for hogs, goats and sheep running at large" and "against hogs, goats and sheep running at large". This manner of submitting the issue was in strict compliance with Article 6935, Vernon's Annotated Civil Statutes, relating to such elections. The appellants contend, however, that these discrepancies tended to confuse and mislead the voters of the particular subdivision. There is no evidence in the record to this effect other than this testimony of one of the appellants: "Q. Did that election notice tend to confuse you where it said that you would vote 'for the stock law' or 'against the stock law'? A. If I hadn't studied it, it would have." We consider that such testimony fails to support the appellants' contention in any respect, and hold such frail discrepancies can not reasonably be presumed to have affected the results of the election. Appellants' third point is overruled. The judgment of the trial court is affirmed.