Submitted on briefs May 5, affirmed June 29, 1915.

# PAYETTE–OREGON SLOPE IRR. DIST. *v.* PETERSON.

### (149 Pac. 1051.)

**Waters and Watercourses — Irrigation Districts — Proceedings of Board of Directors—Resolution Proposing Bond Issue.**

1. A reasonable construction of the language found in a record of a resolution of the board of directors of an irrigation district, authorizing a bond issue, should be given to make the same express its intent as manifested, since the technicality of a court record cannot be expected therein.

**Waters and Watercourses—Irrigation Districts—Bonds—Notice—Statute.**

2. Under Section 6184, L. O. L., providing that before making a sale of irrigation district bonds, the board of directors shall, by resolution, declare its intention to sell a specified amount, fix the time and place of such sale, and give notice by publication thereof at least 30 days in three newspapers published in the state, one of which shall be a newspaper published in the county in which the office of the board of directors is situated, if a newspaper is published in such county, where the time of receiving bids for the sale of such bonds was fixed at 11 A. M. on July 15, 1914, and notice was published in one morning newspaper five successive Fridays, from June 12th to July 10th, in a second paper, a weekly, five times from June 13th to July 11th, and in a third paper, another weekly, five times from June 11th, to July 9th, the publication was sufficient, under the statute, since under the rule of computation that one week is equivalent to seven days, the notice was published for more than 30 days.

From Malheur: DALTON BIGGS, Judge.

In Banc.    Statement by MR. JUSTICE BEAN.

On September 15, 1914, the board of directors of the Payette-Oregon Slope Irrigation District commenced a special proceeding under Sections 29 and 32 of Chapter 223 of the General Laws of Oregon for 1911, providing for irrigation districts, for the purpose of securing an examination and confirmation by the Circuit Court of the proceedings of the board of directors relative to the authorization and sale of the bonds of the district in the amount of $15,000.   Octo-

ber 21, 1914, was fixed as the date for persons interested to appear and answer or plead to the petition. Notice and summons were duly published. On the date named appellant, L. E. Peterson, a land owner in the district, filed an answer, denying on information and belief substantially all the facts set forth in the petition. Upon the trial of the cause, oral and documentary, evidence was introduced, showing all the proceedings taken in the matter by the board of directors in the issuance and sale of the bonds. The trial court found the proceedings of the board of directors regular and legal, and entered a decree confirming and approving them and declaring the bonds legally issued. From such decree defendant L. E. Peterson appeals.

Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

AFFIRMED.

For appellant there was a brief submitted by *Mr. Julien A. Hurley.*

For respondent there was a brief over the name of *Mr. William H. Brooke.*

MR. JUSTICE BEAN delivered the opinion of the court.

The record sets out all the documents and proceedings bearing upon the questions at issue. The appellant contends that the proposed bond issue is not for a purpose authorized by the statute. The district had been regularly organized: See *Board of Directors* v. *Peterson,* 64 Or. 46 (128 Pac. 837, 129 Pac. 132). Surveys and plans for the acquisition of a system of irrigation works had been made in accordance with

the statute, and a bond issue of $276,000 sold. The act in question authorizes the organization of an irrigation district for a beneficial public purpose, that of reclaiming the semi-arid lands of the state, which is apparently the main object of the law. Section 6182, L. O. L., as amended in 1911 (Laws 1911, p. 385), provides:

"For the purpose of procuring necessary reclamation works, and acquiring the necessary property and rights therefor and otherwise carrying out the provisions of this act, the board of directors of any such district shall, as soon as practicable after the organization of any such district, by a resolution entered on its records, formulate a general plan of its proposed works, in which it shall state in a general way what works or property it proposes to lease, purchase, or acquire, and what work it proposes to construct, and the estimated cost for carrying out said plan, and how it proposes to raise the necessary funds therefor."

For the purpose of estimating the cost thereof the law directs the board of directors of the district to have surveys and plans made to demonstrate the practicability of such plan, under the supervision of a competent engineer, and submitted to the state engineer for his report. An election is authorized to be held for the purpose of determining whether or not bonds of the district shall be issued. The act provides the manner of calling and holding such an election. The record shows that all this has been done in compliance with the statute. That section further provides as follows:

"Whenever thereafter said board in its judgment deems it for the best interest of the district that the question of the issuance of bonds in said amount or any amount, shall be submitted to said electors, it shall so declare of record in its minutes, and may thereupon

submit such questions to said electors in the same manner and with like effect as at such previous election. The bonds authorized by any vote shall be designated as series, and the series shall be numbered consecutively as authorized. The portion of bonds of a series sold at any one time shall be designated as an issue, and each issue shall be numbered in its order.''

Section 6184 provides in part that:

''The board may sell bonds from time to time in such quantities as may be necessary and most advantageous, to raise money for the construction of said canals and works, the acquisition of said property and rights, and otherwise to fully carry out the object and purposes of this act.''

This clearly indicates that the law does not contemplate that all the bonds of the district should necessarily be issued at one time. The statute further provides that before making such sale the board shall, by resolution, declare its intention to sell a specified amount of bonds, and fix the day, hour and place of such sale, such resolution to be entered on the minutes, and notice of sale to be given by publication thereof at least 30 days in three newspapers published in the State of Oregon, one of which shall be a newspaper published in the county in which the office of the board of directors is situated, if there be a newspaper published in said county.

After an examination and report of the district engineer, recommending additional construction upon the irrigation system of the district, and certain equipment for the same, which report was approved by the state engineer, the board of directors of the district passed and entered a resolution to the effect that the Payette-Oregon Slope Irrigation District purchase a dredge and other equipment, and install the

headgates and other structures "and complete the
construction of the canals of the district by concrete,
lining certain portions thereof, and by installing at
least eight check-gates in said canals," as recom-
mended by the engineer; that for the purpose of ob-
taining the property and providing for the construc-
tion which it was deemed necessary for the proper
operation of the irrigation system, $15,000 would be
required, which the district should raise by the issu-
ance of coupon bonds to that amount; and that a
special election be called for the first of June of that
year, making provision therefor, and requiring the
secretary to give notice thereof, according to the pro-
visions of the act, which was duly complied with.

1. It is suggested by counsel for appellant, Peter-
son, that there was no declaration made by the board
to the effect that the construction fund for the irriga-
tion works had been exhausted, or that such works
had not been completed. We do not give the resolu-
tion of the board this construction. The board simply
uses different language to the same effect. The neces-
sity of the bonds is plainly declared, and the resolu-
tion recites that they are for the purpose of complet-
ing the irrigation works. It does not indicate that
funds are desired for a reconstruction of the irriga-
tion system, but for the completion thereof, and the
specifications made by the engineer are to the same
import. A reasonable construction of the language
found in the record of the meeting of the board of
directors should be given so as to make the same ex-
press the intent manifested thereby. The same tech-
nicality of expression that appears in a court record
would not be expected to be found therein. The plain
meaning of the minutes is that the bonds are proposed

to be issued for the purpose of the further construction of irrigation works and the acquisition of property to be used in the furtherance of the plan adopted to effectuate the purpose of the legislative enactment, and the resolution in question fulfills the requirements of the statute in that respect, in letter and spirit: *Hall* v. *Hood River Irr. Dist.,* 57 Or. 69 (110 Pac. 405); *Pioneer Irr. Dist.* v. *Campbell,* 10 Idaho, 159 (77 Pac. 328). The general plan of the irrigation system having been adopted prior to the first issuance of bonds, it was unnecessary to reiterate the same in the plans for additional construction. The authority to acquire necessary property implies power to improve the two acres of ground used as a site for the district pumping plant in order to develop and make it productive.

2. It is contended by counsel for defendant Peterson that the publication of the notice of the sale of bonds was insufficient. The time for receiving bids for the sale of the bonds was fixed as July 15, 1914, at 11 o'clock A. M. As shown from the quotation above, publication of the notice is required to be made for 30 days. The affidavits in the record disclose that the notice of the sale of the bonds, which was in due form, was published as follows: In the ''Morning Oregonian,'' five successive Fridays, from June 12th to July 10th, or 34 days immediately prior to the date fixed for the sale of the bonds; in the ''Malheur Enterprise'' weekly five times, from June 13th to July 11th, or for 32 days; and in the ''Ontario Democrat,'' weekly five times, from June 11th to July 9th, or for 34 days. Such publication was a strict compliance with the requirements of the statute, and was sufficient: *O'Hara* v. *Parker,* 27 Or. 156, 174 (39 Pac. 1004); 32 Cyc. 486, 487; *S. & L. Society* v. *Thompson,*

32 Cal. 347; *McGilvery* v. *City of Lewiston,* 13 Idaho, 338 (90 Pac. 348); *Leach* v. *Burr,* 188 U. S. 510 (47 L. Ed. 567, 23 Sup. Ct. Rep. 393). The rule for the computation of the time of publication adopted in the *O'Hara Case,* which has stood the test for 20 years, indicates that one week is equivalent to seven days. The notice in question, having been published for more than the required number of days fulfilled the mandate of the statute.

Section 35 of the Irrigation District Act ordains that:

"The court hearing any of the contests provided for by this act, or any inquiry into the legality or correctness of any of the proceedings herein provided for, must disregard any error, irregularity, informality, or omission which does not injuriously affect the substantial rights of the parties to said proceeding. * * *"

While it is unnecessary to apply this section in this case, it indicates that it was the legislative design that the spirit of the act should be consummated. Section 6213, L. O. L., as amended by the General Laws of Oregon for 1913, page 54, provides in effect that the officers of the district shall have no power to incur an indebtedness or liability in excess of $200 per acre in the aggregate of the land situated in the district, and any debt or liability incurred in excess of such express provision shall be and remain absolutely void, except that for the purpose of organization, the board of directors may incur an indebtedness not exceeding $1 per acre on such land. It is shown by the reference made in the record in this proceeding that the present indebtedness of the district is but little in excess of $40 per acre, and the limit fixed in the inhibition clause contained in Section 6213 has not been approached.

In so far as the case affects the lands of defendant D. W. Rathfon, the matter is determined by the decree in the case of *Rathfon* v. *Payette-Oregon Slope Irr. Dist., ante,* p. 606 (149 Pac. 1044), in which an opinion has just been rendered, excluding his lands from the district.

After a careful examination of all the records and proceedings relating to the authorization of the issuance and sale of the bonds of the district in the sum of $15,000, we find that the same were in all things regular and legal, and that the said bonds and the order for the sale and the sale thereof are legal and valid.

It follows that the decree of the lower court is therefore affirmed.                                   AFFIRMED.