Argued March 20, affirmed April 10, 1917.
Rehearing denied June 19, 1917.
Mandate recalled for correction July 3, 1917.

## WATSON *v.* CITY OF SALEM.

(164 Pac. 567; 164 Pac. 1184.)

**Municipal Corporations — Public Improvements — Notice for Bids— Defective Publication.**

1. Failure to publish a notice for bids for a street improvement for the time and in the manner required by Salem City Charter, Section 26, invalidates an attempted special assessment for the improvements, since the provisions for publication are mandatory.

**Municipal Corporations — Public Improvements — Notice for Bids— Publication—"For"—"Not Less Than."**

2. Salem City Charter, Section 26, requiring notice for bids for a street improvement to be published for not less than five successive days in a daily newspaper, requires the notice to be published for five full days before the right to submit bids is closed, since the word "for" means through, throughout, during the continuance of; and the words "not less than" signify in the smallest or lowest degree, at the lowest estimate.

> [As to construction of "lowest responsible bidder," or similar phrase in statute providing for letting of municipal contracts, see note in Ann. Cas. 1913A, 500.]

**Municipal Corporations — Public Improvements — Notice for Bids— Computation of Period.**

3. Under Section 531, L. O. L., providing that the time for publication of legal notices shall be computed so as to exclude the first day of publication, and to include the day on which the act or event of

which notice is given is to happen or which completes the full period required for publication, and Salem City Charter, Section 26, requiring notice for bids for street improvement to be published for not less than five successive days in a daily newspaper, a notice that bids would be opened on June 10th, which was first published on June 5th, and published daily thereafter, to and including June 9th, was insufficient, since the whole of June 10th should have been given in which to file bids before they were opened.

Municipal Corporations—Public Improvements—Notice for Bids—Defective Publication—Effect.

4.   The fact that no bids would have been received from other bidders if the full time had been allowed after publication of notice for bids does not validate a special assessment made for street improvements, since the proceeding is *in invitum*, in favor of which no equities will be declared.

### ON PETITION FOR REHEARING.

Time—Notice—Computation of Period.

5.   Section 531, L. O. L., providing that the time for publication of legal notices shall be computed so as to exclude the first day of publication and to include the day on which the act or event of which notice is given is to happen, or which completes the full period required for publication, applies to the measurement of time for the publication of notices by cities or towns.

From Marion: WILLIAM GALLOWAY, Judge.

Department 2.   Statement by MR. JUSTICE HARRIS.

This suit involves the validity of a local assessment for a street improvement.   Notwithstanding a remonstrance filed by certain property owners the city entered into a contract for the paving of South 12th Street between Mission Street and the south city limits; and upon the completion of the improvement a special assessment was levied upon the abutting property for the cost of the pavement.   Claiming that the assessment was void George J. Watson and twenty-two others commenced this suit for the purpose of freeing their respective parcels of land from the encumbrance of the attempted assessment.   Asserting that the assessment was valid in all particulars the city resisted the suit but a trial resulted in a decree for the plaintiffs and the defendant appealed.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the names of
*Mr. Bert W. Macy,* City Attorney, *Mr. Grant Corby,*
*Mr. William H. Trindle, Mr. Harold D. Roberts, Mr.*
*Rollin K. Page* and *Mr. Woodson T. Slater,* with oral
arguments by *Mr. Macy* and *Mr. Corby.*

For respondents there was a brief over the names
of *Mr. John H. Carson, Mr. Claire M. Inman* and *Mr.*
*John A. Carson,* with oral arguments by *Mr. Inman*
and *Mr. John H. Carson.*

MR. JUSTICE HARRIS delivered the opinion of the
court.

The plaintiffs contend that the assessment is void
because a sufficient remonstrance was filed against the
proposal to pave the street and because the notice for
bids was not published in conformity with the pro-
visions of the charter.

Section 28 of the charter directs that a proposed im-
provement shall not be proceeded with "if the owners
of more than two-thirds majority of the superficial
area of the property adjacent to such street or part
thereof," file a written remonstrance within a specified
time. Earnestly arguing that the remonstrance filed
did not contain the necessary "more than two-thirds
majority of the superficial area" of adjacent prop-
erty, the city contends that the total superficial area is
1,261,011 square feet; that to be valid the remonstrance
must have represented 840,675 square feet; and that
the remonstrance was insufficient since it only con-
tained 763,588 square feet. The plaintiffs insist that
the remonstrance represented a larger area of super-
ficial square feet than was admitted by the city and
that it contained the necessary "more than two-thirds
majority" of property. The difference between the

calculation made by the city and that contended for by the plaintiffs arises out of an attempted replatting of some of the property adjacent to the street. All the land had been platted previous to the commencement of the street improvement proceedings. After the proceedings had been begun, but prior to the expiration of the time allowed for the filing of a remonstrance and before the contract was let for paving the street, an attempt was made to replat some of the land abutting upon the street without first vacating the previous plat. The plaintiffs base their calculations upon what we shall designate as the attempted plat while the city makes its estimate from the lots and blocks as shown by the previous plats on the theory that the attempted plat is void since no steps were taken to secure the formal vacation of any of the previous plats. For the purposes of this litigation it will not be necessary, however, to do more than to call attention to the controversy about the remonstrance, since the view we take concerning the publication of the notice for bids is determinative of the suit.

The legal voters of the City of Salem amended their charter in 1911 and among the provisions of Section 26 is the requirement that upon the passage of a resolution by the council declaring its intention to improve a street and approving the plans, specifications and estimates of the city engineer, ''the recorder shall duly give notice by publication for not less than five (5) successive days in a daily newspaper published in the city of Salem, Oregon, inviting bids for making said improvement.''

The common council adopted a resolution on June 3, 1912, approving the plans, specifications and estimates of the city engineer, declaring its intention to improve South 12th Street and directing the recorder

to publish a notice inviting bids. A notice inviting sealed bids and stating that "said bids will be opened on or after the 10th day of June, 1912, at or about 7:30 o'clock P. M. in open council in the city hall" was published in the "Daily Oregon Statesman" "for five consecutive issues in said paper, to wit: In the issues of June 5, 6, 7, 8, 9, 1912." The council met on June 10, 1912, at 8:10 P. M., and after opening bids referred them to the street committee. Subsequently on June 24th, the council named the lowest bidder and authorized the mayor and recorder to enter into a contract with such bidder. The plaintiffs contend that the notice was not published "for not less than five (5) successive days" while the city argues that a publication of the notice in the daily issues of the newspaper for June 5th, 6th, 7th, 8th and 9th, fully met the requirements of the statute.

1. At the very outset of the inquiry we must remind ourselves that the provision of Section 26 of the charter prescribing the publication of the notice for bids is mandatory. The notice for bids must be published for the time and in the manner required by the charter; and since the mode is the measure of the power a failure to follow the prescribed mode will invalidate an attempted special assessment: *Jones* v. *Salem,* 63 Or. 126, 132 (123 Pac. 1096); *Matter of Pennie,* 108 N. Y. 364 (15 N. E. 611); *Upington* v. *Oviatt,* 24 Ohio St. 232; *Breath* v. *City of Galveston,* 92 Tex. 454 (49 S. W. 575); *Tifft* v. *City of Buffalo,* 25 N. Y. App. Div. 376 (49 N. Y. Supp. 489); *Michel* v. *Taylor,* 143 Mo. App. 683 (127 S. W. 949); *Polk* v. *McCartney,* 104 Iowa, 567 (73 N. W. 1067); *Meuser* v. *Risdon,* 36 Cal. 239; *Kretsch* v. *Helm,* 45 Ind. 438; 28 Cyc. 1027.

2. Analyzing Section 26 of the charter it will be observed that the language embraces two elements: (1)

The period of publication; and (2) the manner of publication. The period of publication must be "for not less than five (5) successive days." "In a daily newspaper" is the prescribed manner of publication.

The term "for" and the words "not less than" appear in the quoted provision. When used in the connection in which we now find it the term "for" means "through; throughout; during the continuance of": Century Dictionary. If the charter read that the notice must be published "for five days," by the overwhelming weight of authority it would be interpreted to mean a publication through, throughout, during the continuance of five full days: 3 Words and Phrases, 2858; 2 Words and Phrases (2d series), 594; *Northrop* v. *Cooper,* 23 Kan. 432; *Bacon* v. *Kennedy,* 56 Mich. 329 (22 N. W. 824); *Wilson* v. *Thompson,* 26 Minn. 299 (3 N. W. 699); *State* v. *Cherry County,* 58 Neb. 734 (79 N. W. 825); *Dever* v. *Cornwall,* 10 N. D. 123 (86 N. W. 227); *Wilson* v. *Northwestern Mut. Life Ins. Co.,* 65 Fed. 38 (12 C. C. A. 505); *Finlayson* v. *Peterson,* 5 N. D. 587 (67 N. W. 953, 57 Am. St. Rep. 584, 33 L. R. A. 532); 19 Cyc. 1104. The words "not less than," like the language "at least," signify "in the smallest or lowest degree; at the lowest estimate"; and legislation prescribing "not less than" or "at least" a specified number of days is usually construed to mean clear and full days for the specified period of time: 5 Words and Phrases, 4833; 3 Words and Phrases (2d series), 631; *In re Gregg's Estate,* 213 Pa. 260 (62 Atl. 856); *Canadian Canning Co.* v. *Fagan,* 12 B. C. 23; *Reg.* v. *Aberdare Canal Co.,* 14 Q. B. 854 (68 E. C. L. 854); *Mitchell* v. *Foster,* 12 A. & E. 472 (40 E. C. L. 238); *Chambers Elec. L. & P. Co.* v. *Crowe,* 5 D. L. R. 545; *Ward* v. *Walters,* 63 Wis. 39 (22 N. W. 844); 5 C. J. 1438. Emphatic as is the word "for"

it is, if possible, made still more emphatic by the accompanying language "not less than"; and when combined these words unmistakably mean that the notice must be published for a period of time which cannot be less than five full successive days. In brief, the notice must be published five full days before the right to submit bids is closed.

3. We are relieved from the necessity of inquiring about the common-law rules for computing time because Section 531, L. O. L., prescribes the rule that is to be followed in this jurisdiction. That section reads thus:

"The time within which an act is to be done, as provided in this code, shall be computed by excluding the first day and including the last, unless the last day fall upon Sunday, Christmas, or other nonjudicial day, in which case the last day shall also be excluded. The time for the publication of legal notices shall be computed so as to exclude the first day of publication, and to include the day on which the act or event of which notice is given is to happen, or which completes the full period required for publication."

Quoting only such part of the section as is directly applicable it reads thus:

" * * The time for the publication of legal notices shall be computed so as to exclude the first day of publication, and to include the day * * which completes the full period required for publication."

Applying this statute to the record presented by this appeal June 5th must be excluded in computing the period of time prescribed by the charter and the whole of June 10th would be necessary to make the full period of five days; and therefore the notice for bids was not published in conformity with the charter. The published notice expressly stated that the bids would be opened on or after June 10th, and they were

in fact opened on that day. The notice had not been published for the period of time required by the charter when the time is measured and computed by a statute that has served as the guide not only in actions and suits but also in other proceedings: *Rynearson* v. *Union County,* 54 Or. 181, 183 (102 Pac. 785); *Boothe* v. *Scriber,* 48 Or. 561 (87 Pac. 887); *McCabe-Duprey Tanning Co.* v. *Eubanks,* 57 Or. 44 (102 Pac. 795, 110 Pac. 395); *Grant* v. *Paddock,* 30 Or. 312 (47 Pác. 712); *State ex rel.* v. *Macy,* 82 Or. 81 (161 Pac. 111). The right to offer bids should have been kept open until the end of June 10th, and the bids should not have been opened until June 11th.

If it be supposed that the charter required that the notice for bids be given "by publication for not less than five (5) successive weeks" in either a daily or a weekly newspaper it is fair to assume that, in the light of our statute and judicial precedents, it would be conceded that the day on which the first publication issued would be excluded in computing the period of five successive weeks. The fact that the charter mentions days rather than weeks does not render Section 531, L. O. L., any the less applicable. The charter does not merely say that the notice shall be published five times, but the dominant command is that the notice shall be published throughout a full period of not less than five whole days. The time of the day upon which a paper is issued is usually at some hour after the beginning of that day, and this is one of the circumstances that prompts the enactment of statutes like Section 531, L. O. L.

4. The city argues that even though it be decided that the notice was not published the full time required by law, nevertheless the plaintiffs have not shown that other and additional bids were prevented or that the

84 Or.—43

property owners suffered any injury. This, however, is a proceeding *in invitum* "in favor of which" as said by Mr. Chief Justice McBride in *Evans* v. *Meridian Investment and Trust Company, ante,* p. 246 (163 Pac. 1165), decided April 3, 1917, "no equities have ever been declared by this or any other court." When a notice for bids is not published in conformity with the requirements of the charter it is not so much a question of what was done as it is one of what could have been done. The main purpose of the notice for bids is to promote competition and to secure to the taxpayers the benefit of such competition, and as said in *Matter of Pennie,* 108 N. Y. 364, "we are not at liberty to say that a taxpayer is not aggrieved by the omission" to publish the notice for the full period specified by the charter. The assessment attempted to be levied is invalid on account of the defect in the publication of the notice for bids and the decree is therefore affirmed.

Affirmed. Rehearing Denied.

Mr. Chief Justice McBride, Mr. Justice Bean and Mr. Justice McCamant concur.

--------

Denied June 19, 1917.

On Petition for Rehearing.

(164 Pac. 1184.)

On petition for rehearing. Rehearing denied.

*Mr. Bert W. Macy,* City Attorney, *Mr. Grant Corby, Mr. William H. Trindle, Mr. H. D. Roberts, Mr. Rollin K. Page* and *Mr. Woodson T. Slater,* for the petition.

*Mr. Claire M. Inman* and *Mr. John H. Carson, contra.*

Department 2.   Statement by MR. JUSTICE HARRIS.

5.  In a petition for a rehearing filed in this and in the
companion case of *Albert* v. *Salem,* the city contends
that Section 531, L. O. L., does not apply to the meas-
urement of time for the publication of notices by cities
or towns.   The petitioner relies upon *Chung Yow* v.
*Hop Chung,* 11 Or. 220, 221 (4 Pac. 326).   The case
cited is not  applicable, for it refers to what is now
known as Section 539, L. O. L., a provision relating to
the proof of the service of notices.   As pointed out in
the original opinion Section 531, L. O. L., has served
as the standard by which to measure time not only in
actions  and  suits  but  also  in  other  proceedings.
Notable illustrations may be  found  in *Rynearson* v.
*Union County,* 54 Or. 181 (102 Pac. 785); and in *State
ex rel.* v. *Macy,* 82 Or. 81 (161 Pac. 111).   To refuse
to abide by the standard fixed by that statute would
be to ignore a rule that is firmly established by pre-
cedents.

The remainder of the argument found in the petition
proceeds upon the theory that we held that the notice
should have appeared in six successive issues of a daily
newspaper.   We did not rule that the charter required
the notice to be printed and to appear in six successive
issues of the newspaper.

The original opinion points out that Section 26 of
the charter embraces two elements: (1) The period of
publication; and  (2) the manner of publication.   The
period of publication is measured by applying the rule
established in Section 531, L. O. L.   This rule excludes
the first day of publication in determining the period
of time.   For example, if a statute directed the pub-
lication of a notice for at least one week in a weekly
newspaper it would not be necessary to print the notice

in two successive issues of the weekly newspaper; and while one printing and one appearance of the notice would be enough, nevertheless the day on which the paper was actually printed and issued would not be counted in measuring the one week required. Again, if a statute required that a notice be published for not less than five successive weeks in a weekly newspaper it would not be necessary for the notice to appear in six weekly issues, although as stated in the original opinion it is fair to assume that all would concede that the day of the first publication would be excluded in computing the period of five successive weeks. The rule that is applicable to weeks is likewise applicable to days. Our conclusions in the instant case are not out of joint with *Payette-Oregon S. Irr. Dist.* v. *Peterson,* 76 Or. 630, 635 (149 Pac. 1051); but on the contrary our conclusions here are in harmony with *O'Hara* v. *Parker,* 27 Or. 156 (39 Pac. 1004), as well as every other analogous precedent in this jurisdiction. In the original opinion it is distinctly stated,—not that the notice should have appeared in the sixth issue of the newspaper—but that "The right to offer bids should have been kept open until the end of June 10th, and the bids should not have been opened until June 11th." The petitions for a rehearing are denied.

REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCCAMANT concur.