Argued November 12, 1918, modified January 21, rehearing denied February 11, 1919.

## In Re BOARD OF DIRECTORS OF NORTH UNIT IRR. DIST.

## GARD v. PECK.

(178 Pac. 186.)

**Waters and Watercourses—Irrigation District—Legality of Organization—Proceedings to Test—Time.**

1. Under Laws of 1917, page 773, Section 41, directors of an irrigation district had authority to petition for judicial determination of legality of its organization, and legality of issue and sale of bonds, after expiration of 30 days from time action was taken by County Court organizing district, or after proceedings for sale of bonds.

**Statutes—Construction—Intention of Legislature.**

2. The obvious intention of the legislature in a statute should not be defeated by construction.

91 Or.—3

Waters and Watercourses—Irrigation District—Election—Canvass.

3. County Court's canvass of votes at election on question of organization of irrigation district *held* not erroneous or informal, there also having been no error or informality in declaring result.

Time—Notice—Exclusion of First Day.

4. Under Section 531, L. O. L., excluding the first day in computation of time for publication of legal notice, and Laws of 1917, page 754, section 19, requiring at least 15 days' notice, posting on October 14th of notices of bond election to be held October 29th *held* insufficient.

[As to computation of time, see notes in 7 **Am. Dec.** 250; 46 **Am. Rep.** 410; 78 **Am. St. Rep.** 872.]

Waters and Watercourses—Irrigation District—Organization—Validity—Determination.

5. Improvement company incorporated under Laws of 1911, page 256, *held* not to have sufficiently complied with Sections 5, 7 and 10, as amended by Laws of 1917, page 132, section 3, of Incorporation Act, to give it standing as protestant in proceedings by directors of irrigation district to test legality of organization of district, or right to make objections to inclusion of its lands within district.

Waters and Watercourses—Irrigation District—Lands Included.

6. For lands to be excluded from irrigation district because described in articles of incorporation of improvement company filed pursuant to Laws of 1911, page 256, it must be shown that notice of improvement of such lands, provided for in Section 5, has been executed and recorded, or that some provision has been made so that lands can be irrigated or are entitled to be irrigated.

From Jefferson: T. E. J. Duffy, Judge.

Department 2.

This is a special proceeding brought on petition of H. W. Gard, John Henderson, Fred Fisher, P. N. Vibbert and A. D. Anderson, as a board of directors of the North Unit Irrigation District, in Jefferson County, Oregon, to have confirmed under the provisions of Section 41, of Chapter 357, Laws of Oregon for 1917, the organization of the North Unit Irrigation District, and also for the confirmation and approval of the proceedings of said board and district in the election for the issuance and sale of $5,000,000 in bonds of said district; also, to have confirmed and

approved the proceedings of the board in issuing warrants of the district.

The Circuit Court rendered a decree confirming all of the proceedings pertaining to the organization of the North Unit Irrigation District, declared the district legally organized and constituted, confirmed the issuance of the warrants of the district, confirmed the authorization by the district of the issuance of bonds in the sum of $5,000,000, adjudged the same to be valid obligations of the district and overruled the protests of the protestants J. A. Peck and The Haystack District Improvement Company. Each of said protestants has prosecuted separate appeals to this court.

The North Unit Irrigation District was organized in 1916, by virtue of an election held on March 20, 1916, under the provisions of Chapter 223 of the Laws of 1911, as it stood prior to the enactment of Chapter 357, Laws of 1917, amending and repealing all laws pertaining to irrigation districts prior to that date. Within thirty days after the election held for the organization of the district, certain property holders and assessment payers initiated and prosecuted a contest of the election. The case was appealed to this court: See *Links* v. *Anderson*, 86 Or. 508 (168 Pac. 605, 1182).

Referring first to the protest of appellant J. A. Peck after the commencement of the present proceeding, Peck appeared and demurred to the petition of the board of directors upon the grounds: First, that the court had no jurisdiction of the subject matter of the proceeding; second, that the petitioners have no legal capacity to bring this proceeding; third, insufficiency of facts stated in the petition; fourth, several different proceedings are improperly united; fifth, that this

proceeding has not been commenced within the time limited by Section 41 of Chapter 357, Laws of 1917. Upon the demurrer being overruled by the trial court, Peck filed an answer and alleged that he is an interested party, and the owner of land within the boundaries of the irrigation district; admitting many allegations of the petition of the board of directors and denying others, and further answered attacking all the proceedings pertaining to the organization of the North Unit Irrigation District, thereby raising all of the questions submitted and discussed in the case of *Links v. Anderson,* 86 Or. 508 (168 Pac. 605, 1182).

MODIFIED.

For appellants and protestants there was a brief and an oral argument by *Mr. W. P. Myers.*

For respondents and petitioners there was a brief over the names of *Mr. Lewis H. Irving, Mr. William H. Wilson* and *Mr. J. T. Hinkle,* with oral arguments by *Mr. Irving* and *Mr. Wilson.*

BEAN, J.—The demurrer to the petition challenges the right of the directors to institute these proceedings. Section 41 of Chapter 357, Laws of 1917, see page 773, under which this proceeding is brought provides in part as follows:

*"Special Procedure for Confirmation Acts of District.* The board of directors of an irrigation district organized under the provisions of this act, may by petition, commence special proceedings in the Circuit Court of the county in which the office of such district is located, for the purpose of having a judicial examination and judgment of the court as to the regularity and legality of the proceedings in connection with the organization of the district and the proceedings of the said board and of said district providing for and au-

thorizing the issue and sale of the bonds of said district, whether said bonds or any of them have or have not been sold, or disposed of.   Proceedings may likewise be commenced for a judicial examination and judgment as to the regularity and legality of the authorization of contract with the United States and as to the validity of said contract, whether or not the same shall have been executed, and whether or not bonds are to be deposited with the United States.   All the proceedings in connection with the organization of the district and all the proceedings providing for and authorizing a bond issue or contract with the United States may be judicially examined and determined by the court in one special proceeding or any part thereof may be separately examined and determined upon by the court and the board of directors shall in every case have confirmed under the provisions of this section, any authorized bond issue before offering same or any part thereof for sale.''

Subdivision (a) of this section requires the court to fix the time for the hearing of the petition, and order the clerk to give and publish a notice of the filing of the same for three successive weeks in a newspaper; directs what the notice shall state and gives other details and provides that: '' * * Any person interested in said district, or in the issue of said bonds may demur to or answer said petition.''   Subdivision (b) provides that upon the hearing, the court shall determine whether the notice of the filing of the petition has been duly given and published and shall have power and jurisdiction to examine and determine the validity, and approve and confirm—

''All of the proceedings for the organization of said district under the provision of said act, from and including the petition for the organization of the district unless theretofore determined as in this act provided, and all other proceedings which may affect the

legality or validity of said bonds, and the order of the sale and the sale thereof. * *

"The court, in inquiring into the regularity, legality or correctness of said proceedings, must disregard any error, irregularity or omission which does not affect the substantial rights of the parties to said special proceedings. * * "

Subdivision (c) is as follows:

"The board of directors of an irrigation district heretofore, or that may hereafter be organized, may commence special proceedings in the Circuit Court of the county in which the office of such district is located for the purpose of having a judicial examination and judgment of the court as to the regularity and legality of the organization of said district, which proceeding shall be conducted in the same manner as in this act provided for a hearing as to the regularity and legality of the proceedings of the said district, providing for the authorizing the issue and sale of the bonds of the district."

Subdivision (d) reads in part:

"The board of directors may, within the time hereinafter limited, after the order of the county court declaring the organization of any irrigation district hereunder, or declaring the result of any election hereunder, or after the order of the board of directors of such irrigation district including or excluding any lands in or from said district or declaring the result of any election, general or special, herein provided for, or after any order of such board of directors levying any assessment, general or special, or ordering the issue of any bonds for any purpose hereunder, or after the order determining any bond issue or providing for the same, or after such bond issue, bring a proceeding in the Circuit Court of the county in which the district, or the larger portion thereof, is situated for the purpose of determining the validity of any of the acts or things in this section above enumerated. Said proceeding shall be a proceeding in the nature of

a proceeding *in rem*, and the practice and procedure therein shall follow the practice and procedure of suits in equity so far as the same shall be consistent with the determination sought to be obtained except as herein provided. * * "

Subdivision (e) provides in part:

"If any such proceedings, as enumerated in this section of this act, shall not have been brought by the board of directors within thirty days after the entry of the order or performance of any acts in this section enumerated, and for which a contest is by said section provided, then any district assessment payer or other interested person may bring a like proceeding in the Circuit Court of the county where the lands embraced within such district, or the majority thereof, are situated, to determine the validity of any of the acts, orders or things enumerated in this section and concerning which the right of contest is by said section given. * * "

Section 49 of the act so far as material is as follows:

"Nothing in this act shall be so construed as to affect the validity of any district heretofore organized under the laws of this state, or its rights in or to property, or any of its rights or privileges of whatsoever kind or nature; but said districts are hereby made subject to the provisions of this act so far as applicable. * *

"And where districts have heretofore been organized, or bonds authorized, issued or sold or any proceedings have been undertaken on the theory that under the laws as they then existed, assessments might be assessed, levied or collected as hereinabove provided, said organization, authorization, issuance or sale of bonds and any and all such proceedings are hereby validated, cured and confirmed, and said districts shall hereafter proceed and be governed as hereinabove provided and all bonds shall hereafter be issued in accordance with the provisions of this act."

1, 2. The main contention of protestant Peck in regard to the demurrer is that the directors of the irrigation district were not authorized to institute these proceedings for the purpose of having a judicial examination of the legality of the organization of the district and the authorization of the issue and sale of bonds of the district after the expiration of thirty days from the time such action was taken by the County Court organizing the district, or after the proceedings taken by the board of directors of the district for the authorization of the sale of bonds.

This involves the construction of portions of the act referred to. The first portion of Section 41, above quoted, makes plain provision for proceedings to be instituted by the board of directors of an irrigation district organized under the provisions of the act for the purpose of obtaining a confirmation of the organization of the district, and of the proceedings authorizing the sale of bonds. Such confirmation is necessary under the provisions of this section before offering such a bond issue for sale. Subdivision (c) of Section 41, provides for such proceedings for confirmation of the organization of an irrigation district organized before the enactment of Chapter 357. Section 49 of the act clearly makes all irrigation districts theretofore organized under the laws of this state subject to the provisions of the act of 1917. The scope and purpose of this act is to provide for a convenient and expeditious method for a review of the proceedings relating to an irrigation district in order that the acts of the directors of the district in the issuance of bonds may be adjudged to be valid or invalid before the sale of such bonds, and to review other matters. We therefore find in the first portion of Section 41, spe-

cific authority for the board to bring such proceedings without limit as to time of commencement.

In subdivision (d) of this section, it will be noticed that among many other things there is a general clause referring to an order of the board of directors providing for issuance of bonds. This taken together with subdivision (e), it is claimed on behalf of protestant Peck limits the time for instituting proceedings for the examination of matters relating to the issuance of bonds to thirty days after the entry of the order, or the performance of any act enumerated in this section. In our opinion the act does not contain such limitation. Such a construction of subdivisions (d) and (e) would practically nullify the plain provision for the commencement of such proceedings particularly provided in the first portion of Section 41. It would be impossible in accordance with such construction for an examination of matters in connection with the organization of the district, and proceedings authorizing a bond issue, or contract with the United States, in one special proceeding pursuant to the plain authorization in the first part of Section 41, as in the ordinary course of business it would not be expected that a bond issue would be authorized, or a contract with the United States provided for within thirty days after the organization of an irrigation district. The general clause in regard to bonds in subdivision (d) does not qualify or limit the particular provisions contained in the former part of the section authorizing proceedings to be instituted in court by the directors. The obvious intention of the legislature should not be defeated: See Endlich on Inter. of Statutes, § 329; Black on Inter. of Laws, p. 136 et seq. The demurrer was therefore properly overruled.

In regard to all of the proceedings relating to the organization of the district preceding the authorization of the issuance of bonds, the matters pertaining thereto were contested and thoroughly discussed and passed upon by Mr. Justice BURNETT in the case of *Links* v. *Anderson,* 86 Or. 508 (168 Pac. 605, 1182). The decree of the lower court in that case declared the North Unit Irrigation District to have been ''legally created and organized'' and regularly constituted and established. The decree of this court upon the appeal affirmed such decree. By virtue of such authority and for the reasons given in that case all of the proceedings pertaining to the organization of the North Unit Irrigation District and all of the proceedings of the board of directors of the district up to the time of the proceedings for the authorization of the sale of bonds should be adjudged regular and legal, and approved and confirmed.

3. However, it is maintained by counsel for protestant Peck that the canvass of the votes at the election for the organization of the irrigation district was not passed upon in the former case. While we do not so view it, an examination of the record discloses that the County Court of Jefferson County canvassed the votes at such election held on the twentieth day of March, 1916, in the different precincts of the district, ascertained the result to be 247 ballots cast in favor of the irrigation district and 129 ballots against the organization of such district, also ascertained the result as to the election of the officers of the district, and made an order in which all of the material facts are recited including the holding of the election, notice thereof, the number of ballots cast by the electors and declared the territory described in such order duly organized as an irrigation district under the name and style and to be

known as the "North Unit Irrigation District"; and declared five persons who had received the highest number of votes therefor, duly elected as directors, and one who had received the highest number of votes for the office of treasurer of the district, duly elected as such treasurer, and ordered the county clerk to issue certificates of election to each of such officers and that the order be filed and recorded in the office of the county clerk of that county. Whether or not this matter is *res adjudicata,* we find no error or informality in the canvassing of the votes cast at the election for the organization of the district or in declaring the result, and the same is declared to be valid and regular.

4. We come next to the important matter of the issuance of the bonds of the district. In rendering assistance to the officers and persons interested in such an irrigation district by an examination of the proceedings, subdivision (b) of this section makes it incumbent upon the court upon the hearing of such special proceedings to determine whether the notice of the filing of the petition has been published as prescribed in the act, and determine the legality of all the proceedings for the organization of the district unless theretofore determined. The court is also required to examine and determine the validity of the bonds that may have been authorized by the district. In the performance of this duty it is necessary to refer to Section 19 of the act, which ordains the procedure for an election for bonds to the effect that upon the order of the directors an election shall be held to determine whether bonds in an amount to be named in the notice shall be issued for a purpose necessary or convenient in carrying out the provisions of the act. This section directs that notice of such election must be given by posting notices in three public places in each election precinct in

the district for "at least fifteen days prior to the election," and also by publication thereof in some newspaper published in the county, where the office of the board of directors is kept, once a week for at least four successive weeks prior to the election. It is shown by the record in conformity with Section 833, L. O. L., that the notice of the election for the purpose of determining whether or not the said district should be bonded for the sum of $5,000,000 was published for the required length of time in a newspaper published in Jefferson County. The notice states that an election will be held in each of the election precincts in the district on the twenty-ninth day of October, 1917. The affidavit of the posting of notices in the several precincts of the district shows that "three notices of the bond election to be held in said North Unit Irrigation District" were posted in each of the several precincts on the fourteenth day of October, 1917. Section 531, L. O. L., provides in part that:

"The time for the publication of legal notices shall be computed so as to exclude the first day of publication, and to include the day on which the act or event of which notice is given is to happen, or which completes the full period required for publication."

It has already been noticed that such election notices must be posted "at least fifteen days prior to the election." This unquestionably means fifteen full days prior to such time. Counting back from October 29, 1917, fifteen days, it would include all of the 14th of that month. Counting the other way, if the notices of the election were posted on the 14th of October and remained posted for "at least fifteen days prior to the election," the earliest date upon which the election could be held would be October 30th.

The law as we understand it is mandatory in this respect. Section 531, L. O. L., and the decisions of this court applying the same are plain and leave no room for argument: See *Rynearson* v. *Union County,* 54 Or. 181 (102 Pac. 785); *Watson* v. *City of Salem,* 84 Or. 666 (164 Pac. 567, 1184), where the question is fully discussed by Mr. Justice Harris; *State ex rel.* v. *Macy,* 82 Or. 81, 84 (161 Pac. 111); 5 McQuillin on Municipal Corporations, § 2197, and notes.

We also note that the affidavit of the posting of the notices does not state the contents of such notices, or refer to them except in a general way. No notice, or copy of notice is attached to the affidavit of posting.

It is a fundamental principle of law that before taking a person's property or subjecting his property to the payment of a sum of money, the statute providing for the service of the process to authorize such action must be complied with: *Jones* v. *Salem,* 63 Or. 126 (123 Pac. 1096); *Paulson* v. *City of Portland,* 16 Or. 450 (19 Pac. 450, 1 L. R. A. 673, 149 U. S. 30, 38° (37 L. Ed. 637, 13 Sup. Ct. Rep. 750).

It is contemplated by the irrigation district law that in the issuing and sale of bonds of the district, the value thereof shall not be depreciated by reason of a failure to comply with the command of the statute. This is a newly formed irrigation district and we are not advised as to the number of electors in the district so as to determine whether or not it was possible for the result of the election to have been changed if all had voted.

The giving of notices of a bond election in such a district as directed by the statute is a jurisdictional prerequisite to holding a valid special election, the time for holding of which is not fixed by law. Before the directors of an irrigation district would be authorized

to issue and sell bonds of the district, the statutory notices must be given. An election to authorize the issuance of bonds held before the expiration of the time of notice is nugatory: *State* v. *Sengstacken,* 61 Or. 455 (122 Pac. 292, 32 Ann. Cas. 230) ; 9 R. C. L., §§ 14, 15, p. 991; *City of Lindsay* v. *Mack,* 160 Cal. 647 (117 Pac. 924) ; *State* v. *Park Ridge,* 61 N. J. Law, 151 (38 Atl. 750) ; *City of Chanute* v. *Davis,* 85 Kan. 188 (116 Pac. 367).

That part of the decree of the trial court declaring all of the proceedings of the North Unit Irrigation District or the board of directors pertaining to the authorization of the issuance of bonds of said district in the sum of $5,000,000, and the holding of the election therefor, and the posting of notices, making and certifying the returns thereof, to be regular, and authorizing the issue of said bonds of the district, and confirming the same, must be reversed. In all other respects, the decree as to the matters contested by protestant Peck is affirmed.

### Appeal of The Haystack District Improvement Company.

Upon the filing of the petition of the board of directors of the North Unit Irrigation District in the Circuit Court, the Haystack District Improvement Company filed its answer and protested against the inclusion of certain lands aggregating 2,040 acres, which it is alleged the improvement company is organized for the purpose of irrigating, and which are described in the answer. These lands are included within the boundaries of the North Unit Irrigation District. The answer prays for a decree of the court excluding the lands therein described from the irrigation district.

The record shows that the Haystack District Improvement Company filed articles of incorporation under the provisions of Chapter 172, Laws of Oregon 1911, page 256, and paid the required organization and annual license fees to the Secretary of State.

5. It is contended by counsel for the irrigation district that the improvement company has not sufficiently complied with the statute so as to give it a standing in court, or right to make objections to the inclusion of such lands within the irrigation district. Section 4 of this act provides what the articles of incorporation shall specify. Section 5 reads as follows:

"Upon the filing of said articles of incorporation, the owners of all the land described in said articles of incorporation shall make, subscribe and acknowledge, before some person authorized to take the acknowledgment of deeds, a notice to whom it may concern that the lands described in said notice will be improved by irrigation or drainage or both by said corporation under the provisions of this act. Said notice shall be recorded in the office where deeds and other instruments affecting the title to real property are recorded, of the county or counties where the land is situated. From and after the recording of said notice all the debts and obligations of said corporation theretofore or thereafter created shall be a lien upon all the land described in said notice prior to every lien attaching to said land subsequent to the date of recording said notice, except state, county and school taxes, whether such debt or obligation of said corporation be in existence at the time such later lien attaches or be created afterwards; and said lien shall not be personal, but shall be an obligation upon the land and shall run with the land."

This section was repealed by the legislature in 1917: See Laws 1917, p. 131. However, Section 10 of the act as amended by Chapter 101, Laws of 1917, see page

132, provides that if at any time after the filing of said articles of incorporation, or any amendment thereof, the owners of all the land described in such articles of incorporation, or amendment thereto, shall desire to subject said land to the indebtedness incurred by said incorporation, the owners of all such land described in the articles of incorporation, or amendment thereto, shall make, subscribe, acknowledge and record a notice the same as prescribed in Section 5.

Section 7 of the Laws of 1911 is in part as follows:

"Upon making and filing the articles of incorporation and recording of the notice, as herein provided, the persons appointed in said articles as directors and their successors in office, associates and assigns, by the name assumed in such articles shall thereafter be deemed a body corporate with power.

"1. To sue and be sued.

"2. To contract and be contracted with. * * *"

The several following subdivisions of this Section 7 empower the corporation to take measures to procure irrigation or drainage works. Section 10 of the act as amended provides that "after the making and recording of said notice by all owners of land described in said articles of incorporation, or any amendment," the members may authorize the expenditure of money for preliminary investigation and report upon the plans and cost of construction of the irrigation system, and then authorize proceedings for obtaining an irrigation system among which is the sale of bonds. It therefore appears from the statute that it was a necessary requirement in order to complete the organization of the improvement company, and authorize the purchase, construction, or obtaining of works by the corporation for the purpose of irrigating land, that the notice provided for in Section 5, which in effect pledges

the land described in the articles of incorporation to the payment of the obligations of the corporation should be subscribed, acknowledged and recorded as provided. After the filing of the articles of incorporation and the recording of such a notice, according to the provisions of Section 7, and Section 10 as amended, the corporation is empowered to sue and be sued and to act as a corporation for the purposes named. In other words, the execution and recording of the notice mentioned is what gives life and force and responsibility to the corporation. The record does not disclose, and it is not claimed on behalf of the Haystack District Improvement Company that Section 5 of the Laws of 1911, or Section 10 as amended, has been complied with. According to the plain provisions of the statute referred to, with which the organizers of the improvement company have failed to comply, it is not empowered to sue or be sued and has no standing in these proceedings. The owners of land within the limits of the proposed district improvement company have not appeared in these proceedings, or objected to their lands being included within the irrigation district. It is not shown that they rely upon any other source than that proposed in the North Unit Irrigation District for supplying their lands with water.

6. Subdivision (d) of Section 25, Chapter 223, Laws of 1911, page 397, makes it the duty of the board of directors of an irrigation district upon petition therefor, by the owner or owners to exclude from such district, all lands "which are already irrigated, or entitled to be irrigated, from another source or by another system of irrigation works." The same provisions are also found in subdivision (d) of Section 37 of Chapter 357, Laws of 1917: See *Rathfon* v. *Payette-*

91 Or.—4

*Oregon Slope Irr. Dist.,* 76 Or. 606, 614 (149 Pac. 1044).

In order for lands to be excluded from an irrigation district for the reason that such lands are described in the articles of incorporation filed pursuant to Chapter 172, Laws of 1911, page 256, it must be shown that the notice provided for in section 5 has been executed and recorded as therein directed, or that some provision has been made so that such lands can be irrigated, or are entitled to be irrigated. No facts indicating that the lands mentioned should be excluded from the irrigation district have been proved in this case. It is not claimed that such land would not be benefited by irrigation. The Haystack District Improvement Company does not appear to own the lands or have any claim upon them.

That part of the decree of the lower court including the lands described in the answer of the Haystack District Improvement Company within the boundaries of the North Unit Irrigation District and denying the protest of the Haystack District Improvement Company is affirmed. Upon both of these appeals, each party will pay his own costs.        Modified.

Benson and Johns, JJ., concur.

Mr. Justice Olson took no part in deciding this case, his term of office having expired after the hearing.