Argued January 7, affirmed February 17, rehearing denied March 16, 1920.

## IN RE NORTH UNIT IRR. DISTRICT.

## GARD *v.* HENDERSON.

### (187 Pac. 839.)

**Constitutional Law—Waters and Watercourses—Limiting Right to Vote on Issuing Bonds of Irrigation District not a Deprivation of Privileges.**

1. Laws of 1917, page 762, Section 29, relating to the issuance of bonds by an irrigation district, and allowing every owner of one acre of land or more to vote, is not invalid as violating Article I, Section 20, of the Constitution, and Section 1, of the 14th Amendment of U. S. Constitution, as depriving smaller land owners of equal privileges and immunities.

**Newspapers—Publication Affidavit Sufficient, Though Merely Alleging Newspaper was One of General Circulation.**

2. An affidavit, setting forth publication of notice of an election to issue bonds of an irrigation district, which was in the form used under Section 58, L. O. L., prior to the enactment of Laws of 1917, page 461, defining the term "newspaper" and declaring that it shall apply only to papers containing certain amount of printed matter, and having a specified number of subscribers, is sufficient, though it merely alleged that the newspaper was one of general circulation.

**Waters and Watercourses—Affidavit of Publication of Notice of Issuance of Irrigation District Bonds Sufficient, Though Failing to State Amount of Publication Charge.**

3. Though Laws of 1919, page 11, fixing legal charges for the publication of notice and summons, declares that affidavits of proof of publication shall state the amount of the charges, the purpose of the act was merely to prevent overcharge, and an affidavit of notice of publication of an election for the issuance of irrigation bonds is not invalid because it failed to state the amount paid the publisher, the act authorizing the issuance of bonds providing that no irregularity which did not injuriously affect the rights of the parties shall be regarded.

From Jefferson: T. E. J. DUFFY, Judge.

Department 2.

This is a proceeding brought by the directors of the North Unit Irrigation District in Jefferson County, under the provisions of Chapter 357 of the Laws of 1917, to procure a confirmation of an election,

authorizing the issuance of irrigation bonds of that district, to the amount of $5,000,000 (five million dollars). The organization of this district was before this court and the organization of the district held valid in *Links* v. *Anderson,* 85 Or. 508 (168 Pac. 605, 1182).

After organization, an election was held and bonds were voted to the same amount as in the present proceeding. That election was contested and was before this court in *Gard* v. *Peck,* 91 Or. 33 (178 Pac. 190), where is was declared invalid by the decree of this court, upon the ground that the notice of election had not been published for the time required by the statute.

After that decision the directors proceeded to call a second election, at which the bonds were again authorized by a vote of 236 to 100.

This proceeding was then brought by the directors, in the Circuit Court for Jefferson County, to have the proceedings confirmed. The appellants appeared at the hearing and protested the proceeding. There was an order and decree confirming the election and authorizing the issuance of the bonds, from which the protestants appeal.                               AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. W. P. Myers.*

For respondents there was a brief over the names of *Mr. Lewis H. Irving, Mr. John K. Kollock* and *Mr. W. H. Wilson,* with oral arguments by *Mr. Irving* and *Mr. Kollock.*

BENNETT, J.—There are only two questions presented by the brief of appellant. First: Is the act of the 1917 legislature, authorizing these bonds, and es-

pecially Section 29 of the same, fixing the qualification of voters, constitutional? Second: Were the proofs of publication of the notice of election sufficient?

1. The above section provides:

"Section 29. *Qualification of Voters.* The term 'owner of land,' or 'elector' used in this Act, shall include every person, male or female, over the age of twenty-one years, whether a resident of the district or state or not, who is a *bona fide* owner of one acre or more of land situate within the district and whose name appears on the last assessment roll, or who is the holder of an uncompleted title or contract to purchase State or Carey Act lands. Entrymen upon public lands of the United States shall be considered as landowners for the purpose of this Act, and shall be qualified petitioners for the organization of an irrigation district, and shall share all the privileges and obligations of landowners within the district, including the right to vote or hold office, subject to the terms of the Act of Congress entitled 'An Act to promote reclamation of arid lands,' approved August 11, 1916.

"Any corporation shall be entitled to vote as a single land owner through any officer or agent duly authorized in writing under the seal of the corporation. Any guardian, administrator or executor authorized to act as such of a person or estate owning land within the district shall be considered a land owner for the purposes of this Act, where the owner in fee is not otherwise entitled to vote."

It is urged that the above provision, disqualifying the small land owner, who owns less than an acre of land, is in conflict with Article I, Section 20 of the Constitution of the State of Oregon, providing that—

"No law shall be passed granting to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens," and Article XIV, Section 1 of the Constitution of the United States, containing a similar provision.

Similar laws have always been upon the statute books of nearly all the states, and have never been held to be in violation of similar constitutional provisions. Their constitutionality in this regard was fully upheld by the Supreme Court of the United States in *Minor* v. *Happersett,* 21 Wall. 162 (22 L. Ed. 627, see, also, Rose's U. S. Notes), in which it is pointed out that at the very time of the adoption of the federal Constitution nearly every state had limited the right to vote to taxpayers, and in many of the states the voter had to own land of a certain value. In Maryland and North and South Carolina, the freehold must have amounted to at least fifty acres. In our own state, it has been directly held that in the matter of road district (as well as school districts), the legislature may make the ownership of real property a qualification for the right to vote: *Oregon Timber Co.* v. *Coos County,* 71 Or. 462 (142 Pac. 575) ; *Beirl* v. *Columbia County,* 73 Or. 107 (144 Pac. 457). There is no difference in principle; and it is clear that the provision in this act, that the ownership of as much as an acre of land was a necessary qualification of the right to vote, was not a violation of the constitutional provision referred to. There was some doubt at one time as to whether such qualifications of the right to vote in this class of elections might not be in conflict with Article II, Section 2 of the state Constitution, providing for the qualifications of voters at elections; but this doubt has been resolved by the decisions of this court in the cases of *Oregon Timber Co.* v. *Coos County,* 71 Or. 462 (142 Pac. 575), and *Beirl* v. *Columbia County,* 73 Or. 107 (144 Pac. 457), already referred to. This very law has been frequently before the courts, in this and other proceedings, and has been tacitly upheld: *Links* v. *Anderson,* 85 Or. 508 (168 Pac.

605, 1182); *Gard* v. *Peck*, 91 Or. 33 (170 Pac. 190); *Hanley* v. *Irr. Dist.*, 93 Or. 78 (182 Pac. 559).

The decision of the court below, holding the act constitutional, was not error.

2. Section 58, L. O. L., originally read as follows:

"All legal notices, summons, citations, and legal advertisement of any description now required, or which may hereafter be required by law to be published, may be published in weekly or daily newspaper of general circulation published in the county where the action, suit, or other proceeding is pending, or is to be commenced or had, in which such notice, summons, citation, or other advertisement is required to be given; and if there be no such paper published in such county, then in the weekly or daily newspaper of general circulation published nearest to the county seat of the county in which such action, suit, or other proceeding is pending, or is to be commenced or had; *provided, however,* that if there be more than one newspaper fulfilling the requirements of this section in which any such legal notice, summons, citation, or legal advertisement of any description, including notices of sheriff's sale, might be lawfully published, then the plaintiff, or moving party in the action, suit, or proceeding, shall have the exclusive right to designate in which of such qualified newspapers such legal notice, summons, citation, notice of sheriff's sale, or other legal advertisement, shall be published."

Chapter 240, Laws of 1917, amended this section by adding thereto,—

"The term 'newspaper' as used in this section, shall refer and apply to only such newspapers of general circulation made up of at least four pages of at least five columns each, and with type matter of a depth of at least seventeen and three-quarter inches, or if smaller pages then comprising an equivalent amount of type matter, which shall have at least two hundred *bona fide* subscribers living within the county in which the newspaper is published; *providing*

*further*, that such newspaper shall have been established and regularly and uninterruptedly published in such county at least once a week during a period of at least twelve consecutive months immediately preceding the first publication of such notice, summons, citation, notice of sheriff's sale or other legal advertisement."

It is claimed by appellant that the affidavit of proof in this case was insufficient because it did not show that the newspaper in which the publication was made, complied with the provisions of the above-quoted amendment. This is a very important question, since the amendment refers to all publications of summons or notices. Section 833, L. O. L., provides for the proof of publication and who may make the affidavit, and that it shall specify "the time when and the paper in which the publication was made." This section has never been amended. Under the law as it was prior to the amendment, a form of affidavit had come into general use over the entire state, substantially identical with the affidavit used in this case. We think such an affidavit is still sufficient in the first instance. No good purpose could be served by requiring the affidavit of publication to contain all the details in relation to the character of the newspaper—its size, circulation and the length of time it has been published. The affidavit in this case states that it was published in a "newspaper" of general circulation, and the amendment in question simply defines the meaning of the word newspaper. If the paper is in fact not a "newspaper" within the definition of the law, that fact can be shown by affidavits, when a question of fact would be presented. In the absence of any such attack, the showing is *prima facie* sufficient.

3. It is also claimed that the affidavit is insufficient in failing to show the amount charged for the publi-

cation.  Chapter 2 of the Laws of 1919 provides, at some length and in considerable detail, what shall be the legal charges for the publication of notices and summons and then proceeds,—

"In all counties in this state affidavits of proof of publication by newspapers for the publication of any legal notice, summons, citation, notice of sheriff's sale, or other legal advertisement, shall include, in addition to the matters now required, the amount of charge actually made and to be collected by such newspaper for such publication."

The affidavit in this case was as follows:

"I, Lot C. Pearce, being first duly sworn depose and say that I am the printer of the Madras Pioneer, a weekly newspaper, having a general circulation, printed and published at Madras, Jefferson County, state of Oregon.  That a notice, printed copy of which is attached hereto and made a part of this affidavit, was printed and published once a week for four consecutive weeks in the regular and entire edition of said newspaper, and not in any supplement thereof, commencing with the issue dated February 13, 1919, and ending with the issue dated March 13, 1919.

"That the fee actually charged for said publication is $ ——.

"Lot C. Pearce.

"Subscribed and sworn to before me this 15th day of March, 1919.

"(Notarial Seal)                    Vine W. Pearce,
            "Notary Public for Oregon.
"My commission expires April 20, 1921."

If we assume that a fee was actually charged in this case, then there was an omission to state the amount. It is apparent that the purpose of Chapter 2 of the Laws of 1919, already referred to, was to prevent the charging of exorbitant fees.  The failure to state the amount charged cannot affect the extent or sufficiency

of the notice to interested parties.   Subdivision F of Section 41 of the act authorizing the issuance of such bonds, provides:

"The court hearing any of the contests provided for by this Act, or any inquiry into the legality or correctness of any of the proceedings herein provided for, must disregard any error, irregularity, informality or omission which does not injuriously affect the substantial rights of the parties to said proceedings."

We do not think the failure to insert the amount of fees in the affidavit of publication was a fatal omission under this act.

It follows that the judgment of the court below should be affirmed.

AFFIRMED.   REHEARING DENIED.

McBRIDE, C. J., and BEAN and JOHNS, JJ., concur.